No. 12787

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

GARY BOS and STEVEN BOS,

        Plaintiffs and Respondents,

-vs-

MIKE DOLAJAK and DOLAJAK MANUFACTURING
and IRON WORKS COMPANY, INC., a
corporation,

        Defendants and Appellants.

---

Appeal from:  District Court of the Eighteenth Judicial District,
              Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellants:

        Bolinger and Wellcome, Bozeman, Montana
        Page Wellcome argued, Bozeman, Montana

    For Respondents:

        Berg, Angel, Andriolo and Morgan, Bozeman, Montana
        Richard J. Andriolo argued, Bozeman, Montana

---

        Submitted:  March 5, 1975

        Decided: MAY -5 1975

Filed: MAY -5 1975

*Thomas J. Kearney*
                  Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from a judgment entered following a jury verdict rendered in the district court of Gallatin County.

From the record it appears that plaintiffs Gary Bos and Steven Bos, contracted with defendants, Mike Dolajak and Dolajak Manufacturing Co., Inc., residents of North Dakota, for the construction of a metal silo on plaintiffs' dairy farm near Bozeman. Plaintiffs purchased the silo secondhand from the manufacturer, who had repossessed it in California shortly after it had been installed there. The silo was dismantled and shipped to Montana where defendants agreed to erect it for the sum of $6,500 for labor, all materials to be furnished by plaintiffs.

Defendants constructed a concrete base and on June 12, 1972, Mike Dolajak arrived at the Bos ranch to personally supervise the erection of the main portion of the silo by his corporation. The general construction procedure consisted of placing the top of the silo and two rings on the base ring and then jacking this portion up and adding additional rings until the silo was completed. In this case Dolajak utilized eight inside jacks although the construction manual specifically required the use of twelve jacks during the erection procedure in a 36 foot diameter silo. The silo was suspended in the air on cables hanging down from each jack and due to its unstable nature was required to be lowered and bolted to the base ring in the event of bad weather and at night. During the erection of the silo one of the jacks broke leaving seven jacks remaining to hold the approximately 20,000 pound weight of the silo. Dolajak's men had also allowed the silo to twist so that it could not be readily lowered and affixed to the base ring. Dolajak at no time made any effort to stabilize the silo by use of guy wires or any other device.

An expert witness for plaintiffs stated guy wires were always utilized as a standard construction procedure and that he would not allow his men to work on a job without guy wires. Also, standard construction procedures required that one insure the stiffeners were at all times in a line; that all jacks were working; and, that weather conditions be closely monitored.

On the afternoon of June 16, 1972, when the silo was approximately 60 feet in the air and within a few hours of completion, a windstorm developed throwing the silo off its foundation and virtually destroying it.

After the silo was blown down, Dolajak returned to North Dakota and made no attempt or offer to assist in removal of the silo or to make specific arrangements for the erection of a second silo. As a result, the entire decision as to the action to be taken was thrust upon the shoulders of the Bos brothers, both as to removal of the old silo and any salvage, as well as re-erection of the silo. With their limited knowledge of construction procedures, plaintiffs undertook to remove the damaged silo and to salvage whatever items they could. They estimated approximately 1200 man hours were required to complete the salvage and removal operation. Plaintiffs were then required to determine what additional materials would be required for erection of the silo and to secure these items. No other used silos were available at the time and to purchase a new silo, exclusive of the cost of erection, would have cost $40,000.

Plaintiffs purchased the materials necessary for repairs and reconstruction of the silo. They presented proof of alleged damages in these amounts: Costs of replacing the downed silo - $15,342.61; losses resulting from inability to use the silo - $9,932; a total of $25,274.61. Against these alleged damages was an offset of $2,900, alleged to be the value of the concrete

- 3 -

base which was not damaged. Plaintiffs claim the evidence clearly shows damages of $22,374.61.

Defendants admit to damages in the maximum total of $8,695.60, arrived at by taking the value of the silo before it was damaged, and subtracting the salvage value.

The jury awarded $17,626.75. Defendants' motion for new trial was denied and defendants appeal.

Defendants contend the trial court erred in instructing the jury on the general measure of damages in tort and contract actions; that the damages awarded are excessive under the law and the court's instructions; and that the verdict is contrary to the law and the evidence.

Defendants claim that in order to find damages in the amount set by the jury it had to make an award for consequential damages, such as the loss of milk production, corn spoilage, baling hay and rolling feed, and the jury did this because of the court's instructions allowing it to consider general damages as a result of negligence and also breach of contract. They insist the court should have instructed the jury solely on the appropriate measure of damages for damage to, or destruction of, personal property.

The court gave these instructions, over defendants' objection:

> "You are instructed that for the breach of an obligation arising from contract, the measure of damages is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

This instruction follows Montana's statute, section 17-301, R.C.M. 1947.

> "Every person who suffers detriment from the negligent act or omission of another person may recover from him a compensation therefor in money which is called damages. In this case detriment

- 4 -

is the loss or harm suffered. The measure of damages is the amount which will compensate for all the detriment proximately caused thereby hereinbefore defined, whether it could have been anticipated or not."

This instruction follows Montana's statute, section 17-401, R.C.M. 1947.

Defendants offered two instructions on the measure of damages, one where the property could not be repaired and the other where it could. These were refused, but the court did give an abbreviated version of one of these instructions, which read:

"You are instructed that the owner is not entitled to have property put back into better condition than before the damage. Nor is the owner entitled to be compensated for loss of use beyond the time reasonably required to complete the necessary repairs.

"The amount awarded, if any, may not exceed the value of the property just before it was damaged."

While it is defendants' contention that in Spackman v. Ralph M. Parsons Co., 147 Mont. 500, 506, 509, 510, 414 P.2d 918, this Court clearly delineated the proper measure of damages for damage to personal property, this quotation is apt here:

"As for the issue of compensatory damages, the question is always a difficult one. In tort actions, the wrongdoer is liable, in general, for any injury which is the natural and probable consequence of the wrong. These may include both the direct and indirect, but reasonably probable, results of the wrong. Where damage to property is concerned, the purpose of awarding damages is to return the party injured to the same, or as nearly possible the same, condition as he enjoyed before the injury to his property. The injured party is to be made as nearly whole as possible--but not to realize a profit. Compensatory damages are designed to compensate the injured party for actual loss or injury--no more, no less."

The trial court's instructions based upon sections 17-301 and 17-401, R.C.M. 1947, illustrate the intent of the legislature to insure that one who is injured by the wrongful act of

another, whether it be a negligent act or a breach of contract, has a right to recover such damages as will make him whole again. This basic objective of making the injured party whole must now be applied to the particular fact situation in this case.

At the outset, this case involves a unique factual situation. The testimony indicates that the Bos brothers were dairy farmers and the inherent nature of their operation requires an integrated program of crop production, storage, and feeding which must be decided upon prior to the spring growing season and implemented at the time of spring planting. In anticipation of the scheduled completion of the silo plaintiffs had programmed their dairy farming operation to gain maximum crop production and maximum utilization of the storage facilities. This program, once under way, could not be turned on and off like a watertap and serious problems arose when defendants' wrongful actions caused the destruction of the silo.

The silo which defendants were to erect was an item of property with special characteristics. It could not be replaced the next day at the local hardware store or automobile dealership. This was the first time that the dismantling and re-erection of a silo of this type had been attempted, and plaintiffs were able to acquire the silo at a considerable savings. Due to the success of the operation the market value at the time of its destruction far exceeded the actual cost investment. No other used silos were available and the price required for purchase of a new silo was $40,000. Due to plaintiffs' efforts an arrangement was made whereby they could acquire the materials needed in addition to those salvaged from the downed silo at a forty percent discount.

Another factor is the need for removal of the downed silo. This was required so that the foundation could be utilized for the re-erection of the silo and so that as many parts as possible

- 6 -

could be salvaged to minimize the cost of re-erecting the silo. In view of the condition of the downed silo and the unusual stresses placed upon the material, the dismantling of it was an extremely hazardous operation.

Finally, defendants would not return to re-erect the silo and no other experienced builders could be found with available time to do the re-erection. Plaintiffs determined that in order to minimize their damages they had no alternative but to undertake the job of erecting the silo on their own with the help of neighbors.

Plaintiffs brought this action seeking damages from defendants on the basis of breach of contract and negligence. A specific contract was entered into for the erection of the silo in a good and workmanlike manner. The performance of the work required under this contract was never completed. Further, defendants were negligent in the manner in which they undertook to perform the erection contract, which negligence was the proximate cause of the destruction and loss of the silo. Under this fact situation plaintiffs were entitled to go to the jury with instructions on damages relating both to breach of contract and to negligence. Gunderson v. Brewster, 154 Mont. 405, 466 P.2d 589.

The court's instruction on the measure of damages in a contract action is in the words of section 17-301, R.C.M. 1947, and the instruction for damages in a noncontract action is in the words of section 17-401, R.C.M. 1947, and Montana Jury Instruction Guide Instruction No. 30 except that the word "unlawful" has been changed to the word "negligent". Citing Spackman defendants contend the property damage instruction is the same whether we are talking about a tort or contract case--i.e.--the value of the property immediately before, less the salvage value, or the value that it would take to repair it, plus the loss of use, not to

exceed the value of the property immediately preceding the damage. This rule is correct under a fact situation such as existed in Spackman, when dealing with readily replaceable items with an established market value. Such a rule is clearly not applicable when dealing with a fixture, as the silo in the instant case, which is not readily replaceable and which has no established market value and is programmed as an integral part of a total dairy farming operation. Defendant Dolajak was well aware of this and of the damages which would result from loss of use of the silo as he also owns and operates a dairy farm in North Dakota.

In Spackman this Court stated in dealing with formulas for the determination of damages:

> "While such methods serve as useful guides, the final answer rests in good sense rather than mechanical application of such formulas."

In Spackman this Court further recognized different rules for property which has no market value when it stated:

> "One further note in the area of compensatory damages relates to property which, because of its peculiar nature, has no market value. In such cases, reference can be made to the value placed on such an item by its owner, so long as such valuation is not fanciful or unreasonable. Property within this category, for example, would be clothing, luggage, heirlooms or portraits."

See also 22 Am Jur 2d, Damages §149.

In Reynolds v. Bank of America National Trust and Savings Ass'n, 53 Cal.2d 49, 345 P.2d 926, 927, 73 ALR2d 716, cited with approval by this Court in Stahl v. Farmers Union Oil Co., 145 Mont. 106, 114, 399 P.2d 763, the sole issue before the Court was whether the owner of personal property which was wrongfully destroyed is limited in damages to the value of the property at the time of destruction or may he also recover for the loss of use during the period reasonably required for replacement. The California court

held such loss of use recoverable in addition to the value of the property destroyed stating:

> "There appears to be no logical or practical reason why a distinction should be drawn between cases in which the property is totally destroyed and those in which it has been injured but is repairable, and we have concluded that when the owner of a negligently destroyed commercial vehicle has suffered injury by being deprived of the use of the vehicle during the period required for replacement, he is entitled, upon proper pleading and proof, to recover for loss of use in order to 'compensate for all the detriment proximately caused' by the wrongful destruction."

Here, by use of either test the verdict of the jury is reasonable and correct. The evidence in the record established that plaintiffs had acquired a secondhand silo which was equivalent to a new silo at a considerable savings. Thus, the jury could quite properly find that the "market value" (actual value) of the silo at the time of the loss was between $30,000 and $40,000. 22 Am Jur 2d, Damages §142. The jury then awarded plaintiffs the replacement cost of the silo, together with the damages which they had incurred for the loss of use thereof less an offset of approximately $2,900 to the defendants for construction of the foundation. The jury's verdict was eminently fair and reasonable.

The cases of Seaton Ranch Co. v. Montana Vegetable Oil & Feed Co., 126 Mont. 415, 252 P.2d 1040, and McGuire v. Nelson, 162 Mont. 37, 508 P.2d 558, cited by defendants are clearly not applicable to the present fact situation. This is not a case involving any breach of an express or implied warranty.

It is our opinion that the damages awarded by the jury were reasonable under the instructions of the court and the law applicable.

We come now to a determination of whether there is substantial credible evidence to support the verdict and judgment.

Kirby v. Kelly, 161 Mont. 66, 504 P.2d 683. In making this determination the evidence is to be reviewed in the light most favorable to the prevailing party in the district court, being the plaintiffs in this cause. Rogers v. Hilger Chevrolet Co., 155 Mont. 1, 465 P.2d 834; Holenstein v. Andrews, _____Mont._____ (1975), 530 P.2d 476, 32 St.Rep. 41.

We do find the verdict is supported by substantial credible evidence and the judgment of the district court is affirmed.

------------------------------------
                          Chief Justice

We concur:

------------------------------------

------------------------------------

------------------------------------
Justices