No. 14204

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

_____

BOISE CASCADE CORPORATION,
A Delaware Corporation,

Plaintiff and Appellant,

-vs-

FIRST SECURITY BANK OF ANACONDA, et al.,

Defendants and Respondents.

_____

Appeal from: District Court of the Third Judicial District,
Honorable Robert Boyd, Judge presiding.

Counsel of Record:

For Appellant:

Scribner, Huss and Mulroney, Helena, Montana
Watkiss and Campbell, Salt Lake City, Utah
Robert Maach argued, Salt Lake City, Utah

For Respondents:

Knight, Dahood, Mackay and McLean, Anaconda, Montana
David McLean argued, Anaconda, Montana

_____

Submitted: May 3, 1979

Decided: AUG - 9 1979

Filed: AUG - 9 1979

Thomas J. Kearney
_____Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Boise Cascade Corporation appeals from a summary judgment entered against it in the Third Judicial District, Deer Lodge County.

Boise Cascade was engaged in the design, construction and fabrication of modular homes. It maintained a system of independent dealers to market and distribute the prebuilt homes. Mountain Sales, Inc., of Missoula, Montana, was a duly authorized dealer for Boise Cascade in Montana. The president and managing executive of Mountain Sales, Inc. at the time this case arose was James D. Spring. David M. McLean, one of the defendants, an Anaconda, Montana lawyer, was a partner in an enterprise known as Lakeview Associates, then engaged in the subdivision of real property around the area in Montana known as Georgetown Lake.

In the spring of 1974, James D. Spring had a conversation with Robert "Jasty" Johnson, one of McLean's partners in Lakeview Associates. Spring mentioned to Johnson that there was a home already built at Post Falls, Idaho, which was being used as a modular home and which could be purchased, but that the partnership should act immediately because a substantial price increase was about to go into effect. The partnership agreed and Spring called the Boise Cascade facility in Post Falls, to make arrangements to purchase the house through Mountain Sales, Inc. Then he executed on behalf of Mountain Sales, Inc., and forwarded to Boise Cascade, a dealer purchase order dated March 18, 1974, for the home at a total selling price of $18,341 plus $7,659 sales commission. The dealership made a downpayment of $100 with the purchase order.

On March 25, 1974, the modular home was shipped from Post Falls, Idaho to Missoula, Montana and placed on the sales lot for Mountain Sales, Inc.

-2-

On March 21, 1974, four days before the house was shipped to Missoula, Spring brought two separate documents for signatures to Anaconda.  One was a letter of instruction and joint assignment of funds, and the other was an assignment of funds. Spring told McLean that McLean's signatures on the documents were necessary for Mountain Sales' files.  One of those signed by McLean had the following language:

Exhibit #2    ASSIGNMENT OF FUNDS    RECEIVED

MAR 23 1974

TO First Security Bank

Anaconda, Montana

BOISE CASCADE

#12299

Exhibit #2

I (We) the undersigned have placed an order for __/__ Boise Cascade Home(s) in the amount of $ _26,000____ (See attached contract).  As an inducement to Mountain Sales, Inc., as Seller and First Security Bank of Missoula, hereinafter referred to as Assignees, to start production, the undersigned does hereby authorize you to allocate, and does hereby assign, transfer and set over to Assignees the sum of $ 26,000____, to be disbursed to Assignees as joint payees upon delivery of said home(s) evidenced by a completion certificate signed by the undersigned Purchasers.

It is specifically understood and agreed that neither the giving nor accepting of this letter by Assignees, with or without security, shall in any way affect or constitute a waiver of the right of either Assignee to file or enforce any mechanic's or materialman's lien or maintain any action to which it would otherwise be entitled.

As per the foregoing instructions, we have allocated and set aside _Twenty Six_ _Thousand no/100_ Dollars ($_16000._), and payment of the hereinabove described . invoices will be made by us to Assignees as joint payees from the said funds upon presentation by Assignees of any one or more such executed completion certificates.

Accepted this _21st_ day of _March_, 19_74_.

FIRST SECURITY BANK
Anaconda, Montana 59711
(Lending Institution)

By _____

Title _____J. R. Bennett, President____

_____
(Purchasers)

_____
(Purchasers)

APPROVED:

SELLER: Mountain Sales, Inc.

By _____

Title _____President_____

First Security Bank of Missoula

By _____

Title __VICE PRESIDENT__

The foregoing assignment was stamped "RECEIVED, MAR 23 1974, BOISE CASCADE" and the following handwritten notation:

"Tom

"Invoice this to Bank when we bill this out

"LKA"

"LKA" is Larry K. Anderson, a managing employee in the home office of Boise Cascade.

As indicated above, J. R. Bennett, president of the First Security Bank of Anaconda, had executed the instrument shown on March 21, 1974.

The second document was a letter of instruction and joint assignment of funds which was not presented to J. R. Bennett for his signature until July 25, 1974. We will set out below the full text of the second document in our discussion relating to letters of credit. It is enough to say at this time that the two documents concerned the same sale and the same fund,

-4-

but the first instrument assigned the funds to Mountain Sales and First Security Bank of Missoula as joint payees, whereas the second instrument assigned the funds to Mountain Sales and Boise Cascade as joint payees.

Bennett signed the second instrument on behalf of the First Security Bank of Anaconda at the request of James D. Spring.

On August 1, 1974, the house was transported from the sales lot in Missoula to the site in the subdivision on Georgetown Lake. McLean paid the balance due for the modular house by taking three checks to Missoula. The three checks were payable to Mountain Sales, Inc. and were deposited by James D. Spring in the dealership account at First Security Bank of Missoula. The money used by McLean to pay for the house had been loaned to Lakeview Associates by the First Security Bank of Anaconda. No invoice or completion certificate was presented to the bank in Anaconda. The Anaconda bank instructed Lakeview Associates to be certain the funds were delivered to First Security Bank of Missoula. The record does not disclose what Mountain Sales, Inc. did with the funds deposited in its accounts.

The dealership contract between Boise Cascade and Mountain Sales, Inc. was eventually terminated by Boise Cascade. To settle its account with Boise Cascade, Mountain Sales, Inc. executed and delivered to Boise Cascade a promissory note dated January 31, 1975, personally guaranteed by James D. Spring, in the amount of $20,397.43. The note provided that the guaranty by Spring would be extinguished upon his death or incapacity. On April 4, 1975, Spring fell from a horse and became totally incapacitated.

On October 10, 1974, Boise Cascade had filed a materialman's lien on the modular house now situated on Georgetown Lake.

-5-

On August 1, 1975, Boise Cascade filed a release of material-man's lien in the Clerk and Recorder's Office in Granite County, stating that the debt had been fully paid. However, an affidavit before the District Court at the time of the motion for summary judgment from a Boise Cascade representative stated that the release had been mistakingly filed and that no consideration had been received for the release of the materialman's lien and that the debt had not been satisfied.

On June 11, 1976, Boise Cascade filed a complaint in the District Court for Missoula County against First Security Bank of Anaconda and McLean. The complaint has four claims. The first claim is on breach of contract, alleging that as a condition precedent to approval of the purchase contract and commencement of construction of the modular home, on July 24, 1974, the defendants had executed the second document, assigning funds to Boise Cascade as a joint assignee; that the funds had not been delivered and that the defendants refused to perform the assignment. The second claim is alleged to be one in "estoppel in pais or equitable estoppel." The essential allegations are that the defendants disclaim any contractual obligations to Boise Cascade; that they gave a written promise to set aside and pay funds to Boise Cascade as a joint payee in order to induce Boise to manufacture, sell and deliver the prefabricated home; that Boise Cascade relied on the assignment to materially change its position; and that because thereof the defendants are estopped from denying the obligation to pay Boise Cascade $18,341. The third claim for relief in the complaint is alleged to be on the basis of negligence, in which it is stated that the defendants owed a duty to Boise Cascade in connection with the disbursement of the proceeds of the $18,341 construction loan; that the defendants were negligent

-6-

in that they disbursed the proceeds to Mountain Sales, Inc., solely; that Mountain Sales is insolvent; and by reason of such alleged negligence of the defendants, Boise Cascade has been damaged in the sum of $18,341. The fourth claim is alleged to be on quasi-contract, quantum meruit and unconscionability in that Boise Cascade has provided materials for a home with the expectation of being paid; that the defendants have received a benefit; and that it would be unjust and unconscionable for the defendants to retain the benefits without payment to Boise Cascade.

McLean and First Security Bank of Anaconda filed their amended answer generally denying the allegations in Boise Cascade's complaint and adding a counterclaim in the nature of malicious prosecution.

Both sides moved the District Court for summary judgment. On December 21, 1977, the District Court entered findings of fact and conclusions of law granting summary judgment to defendants on the claims of Boise Cascade, and denying the counterclaims of defendants. Judgment was entered January 16, 1978 in favor of the defendants on Boise Cascade's claim. Boise Cascade appeals from the summary judgment taken against it; no cross-appeal is taken by the defendants as to the counterclaims.

The issues stated by Boise Cascade are:

1. The District Court erred in granting summary judgment to the defendants on both the contractual and negligence causes.

2. The District Court erred in concluding that the second document (set forth below) dated July 25, 1974 failed for lack of consideration and lack of mutuality.

3. The District Court erred in concluding that as a matter of equity defendants have performed the obligation by paying Mountain Sales, Inc.

-7-

4. The District Court erred in finding that the defendants were not guilty of any negligence.

While those are the issues stated by Boise Cascade, it has developed, in the briefs and upon oral argument, that the real issue being presented by Boise Cascade to this Court is that the second document of July 25, 1974 was in legal effect a letter of credit, and thereof Boise Cascade, and not the defendants, is entitled to summary judgment.

FINDINGS OF FACT IN SUMMARY JUDGMENT CASE

It has been helpful to us in considering this matter that the District Court set forth in findings, the "uncontradicted, uncontested facts" of the case. As we noted in Eisemann v. Hagel (1971), 157 Mont. 295, 299, 485 P.2d 703, 705, findings of fact in cases where the court grants summary judgment are unnecessary and redundant. The reason is that the facts are not decided when a summary judgment is granted, since Rule 56, Mont.R.Civ.P. requires that there be no material fact issue present in the case. Therefore, the failure of an appellant to assign error to findings of facts in a summary judgment case has no effect on his appeal, Eisemann, supra; Washington Optometric Association v. County of Pierce (1968), 73 Wash. 445, 438 P.2d 861. Accordingly, in this case, while we have regarded the facts noted by the District Court for its summary judgment, we have also reviewed the record in this case to make certain that no fact issue is present which would make it necessary to alter, vacate, or remand on the basis of a fact issue.

THE LETTER OF CREDIT ISSUE

In this Court, Boise Cascade has contended that the document of July 25, 1974 was in legal effect a letter of credit, and as such, requires a summary judgment in favor of Boise Cascade, at least against First Security Bank of Anaconda.

-8-

We set forth now the full text of a document signed

by First Security Bank of Anaconda on July 25, 1974:



## Boise Cascade Homes

### LETTER OF INSTRUCTION AND
### JOINT ASSIGNMENT OF FUNDS

TO _____

_____

_____

I (We) the undersigned have placed an order for one (1) Boise Cascade Home in the amount of _TWENTY-SIX THOUSAND & No/100_ _____ dollars (See Attached Contract). As an inducement to _MOUNTAIN SALES_ _____ ., as Seller and Boise Cascade Corporation as Manufacturer, hereinafter referred to as Assignees, to begin production and to further secure Assignees' ability to collect sums owing pursuant to the above-mentioned order, you are hereby authorized and instructed to allocate and, on or before thirty (30) days following the date of delivery of said home, to set aside from my (our) funds on deposit and/or allocated by you, the sum of _EIGHTEEN THOUSAND THREE HUNDRED FORTY- ONE_ dollars ($ _18,341.00_ ). I (We) in further consideration of Assignees' beginning production of the above-mentioned house, do hereby assign, transfer, and set over to Assignees the above-mentioned set-aside funds and do hereby instruct you to deliver such set-aside funds to Assignees as joint payees upon presentation to you by Assignees of an invoice and a Completion Certificate signed by the undersigned purchasers.

It is specifically understood and agreed that neither the giving nor accepting of this letter by Assignees, with or without security, shall in any way affect or constitute a waiver of the right of either Assignee to file or enforce any mechanic's or materialman's lien or maintain any action to which it would otherwise be entitled.

_____     _Daniel M. McLean_
Purchaser                                 Purchaser

### APPROVED:

SELLER: _Mountain Sales Inc._      MANUFACTURER: Boise Cascade Corporation

By _James L. Spivey_              By _____

Title _U-P_                              Title _____

-9-

## ACKNOWLEDGEMENT AND ACCEPTANCE

As per the foregoing instructions, we have allocated and will set aside on or before 30 days after delivery of the above-mentioned house the sum of *Eighteen Thousand Three Hundre Forty-one* dollars ($ *18341 00*) and payment of the hereinbefore described invoice will be made by us to Assignees as joint payees from said funds upon presentation by Assignees of the above-mentioned invoice accompanied by an appropriate Completion Certificate.

Accepted this _____ day of _____ July _____ 19 74

FIRST SECURITY BANK
'Anaconda, Montana 59711

By _____

(Lending Institution)

Title _____ F. R. BENNETT, PRESIDENT

AD-12—6/74  (406) 563-5203



Chapter 5 of the Uniform Commercial Code relates to letters of credit. Section 30-5-102 MCA states:

"(1)  This chapter applies:

"(a)  to a credit issued by a bank if the credit requires a documentary draft or a documentary demand for payment; and

"(b)  to a credit issued by a person other than a bank if the credit requires that the draft or demand for payment be accompanied by a document of title; and

"(c)  to a credit issued by a bank or other person if the credit is not within sub-paragraphs (a) or (b) but conspicuously states that it is a letter of credit or is conspicuously so entitled.

"(2)  Unless the engagement meets the require-ments of subsection (1), this chapter does not apply to engagements to make advances or to honor drafts or demands for payment, to authorities to pay or purchase, to guarantees or to general agreements . . ." (Emphasis added.)

Further, under the UCC, a "letter of credit" and a

"documented demand for payment" are defined as follows:

-10-

"(a) 'Credit' or 'letter of credit' means an
engagement by a bank or other person made at
the request of a customer and of a kind within
the scope of this chapter (30-5-102) that the
issuer will honor drafts or other demands for
payment upon compliance with the conditions
specified in the credit. A credit may be
either revocable or irrevocable. The engage-
ment may be either an agreement to honor or a
statement that the bank or other person is
authorized to honor.

"(b) A 'documentary draft' or a 'documentary
demand for payment' is one honor of which is
conditioned upon the presentation of a document
or documents. 'Document' means any paper in-
cluding document of title, security, invoice,
certificate, notice of default and the like."
Section 30-5-103(a)&(b) MCA.

If the instrument of July 25, 1974 is truly a letter of

credit, as contended by Boise Cascade, then that letter of

credit would become a primary obligation between the issuer,

First Security Bank of Anaconda, and Boise Cascade as beneficiary.

Asociacion de az.de Gua v. United States Nat. Bank of Ore.

(9th Cir. 1970), 423 F.2d 638, 641; Fidelity Bank v. Lutheran

Mutual Life Insurance Co. (10th Cir. 1972), 465 F.2d 211. Lack

of consideration is not a defense to a documentary demand on

a letter of credit, section 30-5-105 MCA, and the issuer must

honor a draft for payment which complies with the relevant

terms of the credit regardless of conformance with the underlying

contract between the customer and the beneficiary.

We conclude, upon consideration, that the written acceptance

by the bank in the instrument of July 25, 1974 does not con-

stitute a letter of credit for two reasons: (1) the acceptance

contained in the instrument of July 25, 1974 is not a letter of

credit within the meaning of the Uniform Commercial Code; and,

(2) in any event there has been no compliance with the terms

of the instrument of July 25, 1974 so as to make the issuer

liable.

The contention that the bank's obligation was a letter of

credit was not raised by the pleadings, Milne v. Leiphart (1946),

119 Mont. 263, 174 P.2d 805; Sonnek v. Universal C.I.T. Credit Corporation (1962), 140 Mont. 503, 374 P.2d 105, nor raised in briefs or argument before the entry of summary judgment, State ex rel. Sol. v. Orcutt (1979), ____ Mont. _____, 588 P.2d 996, 36 St.Rep. 1; State v. Voyich (1963), 142 Mont. 355, 384 P.2d 765. We will not consider such issues for the first time on appeal.

Without waiving that ground for rejection of Boise Cascade's contention, we are constrained to note that this instrument does not constitute a letter of credit. The instrument does not evince a clear intention on the part of the bank to be primarily liable to Boise Cascade upon Boise Cascade's compliance with the terms of the instrument, irrespective of the underlying agreements between Boise Cascade and McLean. Sections 30-5-101 et seq., MCA apply essentially to a letter of credit arrangement, and not to a contract between the issuer and his customer, nor to a contract between the customer and the beneficiary. The instrument here, prepared by Boise Cascade, is no more than its title indicates: a letter of instruction and joint assignment of funds. The bank does not agree to be primarily liable. For that reason the engagement of the bank does not meet the requirements of section 30-5-102(1) MCA, and accordingly that portion of the UCC does not apply, under section 30-5-102(2) to "engagements to make advances or to honor drafts or demands for payments, to authorities to pay or purchase, to guarantees or to general agreements."

Finally, whether the instrument is regarded as a letter of credit, or a simply assignment, Boise Cascade has made no showing that it has complied or could comply with the terms of the engagement, that it supply an invoice and a completion certificate signed by McLean. The purchaser of the mobile home is Mountain Sales, Inc.; therefore, the dealer was Boise Cascade's customer and not McLean.

BREACH OF CONTRACT ISSUE

Boise Cascade also maintains that both the bank and McLean are liable to it upon a breach of contract theory in that they did not perform the obligations of the instrument of July 25, 1974.

The District Court decided that no contract was involved between Boise Cascade on the one hand, and McLean and First Security Bank of Anaconda on the other, because no contract existed between them. The courts decision was based on grounds of lack of consideration and lack of mutuality.

Consideration is defined in section 28-2-801 MCA as "[a]ny benefit conferred or agreed to be conferred upon the promisor by any other person . . ." The consideration recited in the July 25, 1974 instrument is that as an inducement to Mountain Sales as seller and Boise Cascade Corporation and Manufacturer, hereinafter referred to as assignees, to begin production of the modular home. In this case, at the time of the execution of the instrument, the modular home had already been constructed and was sitting on the Missoula lot of Mountain Sales, Inc.

From the viewpoint of David M. McLean, no consideration whatever transferred from Boise Cascade to him. He had agreed to purchase a modular home from Mountain Sales, Inc. which was already constructed. He had agreed to pay $26,000 for his purchase which amount he fully paid. The instrument he signed on July 25, 1974 was not addressed to any particular bank, and the balance he agreed could be allocated was no more than what he had already agreed to pay as the balance on the purchase from Mountain Sales, Inc. Boise Cascade cannot point to any benefit conferred on upon David M. McLean by it through his signature on July 25, 1974.

In like manner, no benefit moved from Boise Cascade to First Security Bank of Anaconda. Its lending arrangement was

-13-

made with David M. McLean and his associates, not with Boise Cascade. It had signed two instruments, one for delivery to Mountain Sales, Inc. and Boise Cascade, and the other to Mountain Sales, Inc. and First Security Bank of Missoula. The monies from First Security Bank of Anaconda were eventually deposited with the First Security Bank of Missoula. Both instruments had been procured from the bank at the instigation of Mountain Sales, Inc. No dealings occurred between any representative of Boise Cascade and First Security Bank of Anaconda. There is no consideration from Boise Cascade moving to First Security Bank of Anaconda which in any way can be considered an inducement to the bank, or a benefit conferred upon it by Boise Cascade, or could be construed as a detriment incurred by Boise Cascade through the signature received from First Security Bank of Anaconda. In that situation, again, no consideration existed.

Consideration is an essential element of a contract, section 28-2-102 MCA, without which a contract does not exist. What Boise Cascade had from First Security Bank of Anaconda was simply a gratuitous promise. Such a promise cannot be enforced at all.

> "It is well settled, as a general rule, that consideration is an essential element of, and is necessary to the enforceability or validity of, a contract. It follows from this rule that a promise not supported by any consideration cannot amount to a contract or be enforced, and that want or lack of consideration is an excuse for nonperformance of a promise. In order for a contract to be valid and binding, each party must be bound to give some legal consideration to the other by conferring a benefit upon him or suffering a legal detriment at his request. In suits upon unilateral contracts, it is only where the defendant has had the benefit of the consideration for which he bargained that he can be held bound." 17 Am.Jur.2d 428 Contracts §86.

The engagement also lacks mutuality as against both McLean and the bank, but in view of the fact that we find no consideration here, it is unnecessary to discuss lack of mutuality at length.

-14-

## THE NEGLIGENCE ISSUE

Boise Cascade contends that because the trial court made no findings or conclusions respecting Boise's claims of negligence against the bank and McLean, that the District Court overlooked Boise's negligence claim entirely. It also contends that the negligence issue was not squarely before the court and that the general proposition is that issues of negligence are ordinarily not susceptible of summary adjudication, citing Mally v. Asanovich (1967), 149 Mont. 99, 105, 106, 423 P.2d 294, 297. As we have pointed out earlier in this opinion, there is no duty on the District Court to make findings of fact and conclusion of law, so this is not a factor so far as our review of summary judgment is concerned. We wish to determine whether there was any genuine issue of material fact involved, and if none exists, it then becomes a question of law as to whether a summary judgment was properly rendered in this case on the question of negligence as well as the other issues.

We have recognized that a breach of contract might also give rise to an action in tort, State v. District Court of Eighth Judicial District (1967), 149 Mont. 131, 136, 423 P.2d 598, 600. We have also discussed what determines when a tort and a breach of contract arise out of the same set of facts in First Security Bank of Bozeman v. Bankers Union Life Insurance Company (1979), ____ Mont. ____, ____ P.2d ____, 36 St.Rep. 854, 862. We stated:

> "A cause of action may sound in tort although
> it arises out of a breach of contract, if a
> defaulting party, by breaching the contract,
> also breaches a duty which he owes to the
> other party independently of the contract.
> This distinction was carefully noted in
> Battista v. Lebanon Trotting Association
> (U.S.C.A. 6th 1976), 538 F.2d 111, where the
> Sixth Circuit Court applied Ohio law. There
> the court noted that under Ohio law a tort

-15-

arises out of a breach of contract if the
party also breaches a duty which he owes
to another independently of the contract,
and which duty would exist even if no
contract existed.  It is this factor
which determines whether an action of this
kind is one of contract or of tort . . ."

Boise Cascade's claim here is that the defendants failed

to make their check payable to Boise Cascade and Mountain Sales,

Inc. jointly, and that this failure constituted a breach of

contract and negligence.  In other words, Boise Cascade is

attempting to recover under two legal theories for one breach of

duty.  As we stated in First Security Bank of Bozeman, supra,

there must exist an independent duty, separate and distinct

from the contract obligation, before a party can recover for

a tort or for a breach of contract on the same set of facts.

What is missing here, and what defeats Boise Cascade's negligence

claim, is an independent duty, apart from the instrument of

July 25, 1974, owed by either defendant to Boise Cascade.  In

that circumstance, as a matter of law, Boise Cascade has no

negligence action on which it may recover against either defendant.

THE EQUITY ISSUE

The District Court found as "a matter of equity" that

the defendants fully performed their obligation by paying the

agreed-upon price to Mountain Sales, Inc.

Boise Cascade contends by so holding the court denied

that portion of its complaint relying upon equitable estoppel

and that such a denial is improper.

Equitable estoppel is an unfavored doctrine and will only

be sustained upon clear and convincing evidence, Fiers v.

Jacobson (1949), 123 Mont. 242, 211 P.2d 968.  What is lacking

as an element of estoppel against the defendants is any reliance

on the execution of the instrument of July 25, 1974 by Boise

Cascade to begin production of or to deliver the modular home.

An estoppel arises only when a party by his acts, conduct or

-16-

acquiescence has caused another in good faith to change his position for the worse. Mundt v. Mallon (1938), 106 Mont. 242, 249, 76 P.2d 326; Bagley v. Hotel Florence Company (1974), 165 Mont. 145, 151, 526 P.2d 1372, 1375.

The summary judgment entered by the District Court is affirmed.

_____
John C. Sheehy
Justice

We Concur:

_____
Frank I. Haswell
Chief Justice

_____
Gene B. Daly

_____
John Conway Harrison

_____
Justices