

DA 13-0347

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 136

JENNIFER DEWEY,

        Plaintiff and Appellant,

   v.

KENNETH STRINGER,

        Defendant and Appellee.

APPEAL FROM:   District Court of the First Judicial District,
                     In and For the County of Lewis and Clark, Cause No. ADV 12-872
                     Honorable Michael Menahan, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Brian J. Miller, Morrison, Sherwood, Wilson & Deola, PLLP, Helena, Montana

        For Appellee:

                Murry Warhank, Gough, Shanahan, Johnson & Waterman, PLLP, Helena, Montana

                                Submitted on Briefs:  April 2, 2014
                                        Decided:  May 27, 2014

Filed:

                                     Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Jennifer Dewey (Dewey) appeals from the order of the First Judicial District Court, Lewis and Clark County, granting summary judgment in favor of Kenneth Stringer (Stringer) on Dewey's claims for constructive fraud, deceit, and negligence.  We affirm in part and reverse in part, restating the issue raised on appeal as follows:

¶2      *Did the District Court err by dismissing Dewey's tort claims on the ground that they arose strictly out of a breach of contract?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      On March 12, 2012, Dewey and Stringer entered into a buy-sell agreement (Agreement) for the purchase of Dewey's home, located in Helena.  The parties utilized a standard Montana Association of Realtors form contract and were not represented by legal counsel.  Stringer agreed to pay $265,000 for Dewey's home, providing her with $2000 in earnest money.  The Agreement contained a remedies provision stating:

> If the Seller accepts the offer contained in this Agreement and Buyer refuses or neglects to consummate the transaction anticipated by this Agreement within the time period provided in this Agreement, the Seller may:
>
> (1)  Declare the earnest money paid by Buyer be forfeited; or
> (2)  Demand that Buyer specifically perform Buyer's duties and obligations under this Agreement; or
> (3)  Demand that Buyer pay monetary damages for Buyer's failure to perform the terms of this Agreement.

In an addendum attached to the Agreement, the parties agreed that Stringer would occupy Dewey's home from April 1, 2012 until the closing date, scheduled for September 28, 2012, and pay her $1300 in rent per month.  The addendum contained a provision stating:  "Buyer, at his/her expense, shall maintain heating, plumbing, lighting, ventilation, air-conditioning

fixtures, built-in appliances, and other equipment included in the sale in normal working condition commencing on the date of occupancy."

¶4 As agreed, Stringer moved into Dewey's home in April and began paying rent. However, on June 29, 2012, Stringer sent Dewey a letter notifying her that he had decided not to purchase the home and had vacated the premises. He paid rent for July but not August or September. Dewey retained Stringer's final rent payment as well as the $2000 earnest-money deposit.

¶5 On October 14, 2012, Dewey filed a complaint alleging that Stringer committed constructive fraud and deceit by making a series of false representations about his ability and intention to purchase her home. She also claimed that Stringer negligently maintained and managed her property throughout his period of occupancy. Dewey sought both actual and punitive damages. Stringer filed for bankruptcy, but dismissed his bankruptcy petition several weeks later. Stringer answered and counterclaimed, seeking a declaration that he was entitled to the return of his $2000 earnest-money deposit under the Agreement. Thereafter, Dewey and Stringer filed cross-motions for summary judgment. Following a hearing on March 20, 2013, the District Court granted summary judgment in favor of Stringer on all of Dewey's claims. The District Court also granted partial summary judgment in favor of Dewey, determining that Stringer breached the Agreement, which entitled Dewey to retain the $2000 earnest-money deposit pursuant to the remedies provision. Dewey appeals the District Court's dismissal of her remaining claims against Stringer.

3

**STANDARD OF REVIEW**

¶6     Summary judgment is appropriate only when "'the pleadings, depositions, answers to interrogatories, and admissions on file'" together with any affidavits, demonstrate that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. *Brothers v. Home Value Stores, Inc.*, 2012 MT 121, ¶ 6, 365 Mont. 196, 279 P.3d 157 (quoting M. R. Civ. P. 56(c)).   Once the moving party meets its burden, the opposing party "must present substantial evidence essential to one or more elements of its case to raise a genuine issue of material fact." *Tin Cup Co. Water v. Garden City Plumbing & Heating, Inc.*, 2008 MT 434, ¶ 22, 347 Mont. 468, 200 P.3d 60 (citation omitted).  This Court reviews de novo a district court's rulings on motions for summary judgment. *Est. of Irvine v. Oaas*, 2013 MT 271, ¶ 12, 372 Mont. 49, 309 P.3d 986 (citation omitted).  We review a district court's interpretation of a contract for correctness. *Brothers*, ¶ 6.

**DISCUSSION**

¶7     *Did the District Court err by dismissing Dewey's tort claims on the ground that they arose strictly out of a breach of contract?*

¶8     As a general rule, when a party's claim is based solely upon a breach of the specific terms of an agreement, the action sounds in contract. *Billings Clinic v. Peat Marwick Main & Co.*, 244 Mont. 324, 338, 797 P.2d 899, 908 (1990).  However, "'a ground of liability in tort may coexist with a liability in contract, giving the injured party the right to elect which form of action he will pursue.'" *Garden City Floral Co. v. Hunt*, 126 Mont. 537, 543, 255 P.2d 352, 356 (1953) (citation omitted); *accord Corp. Air v. Edwards Jet Ctr. Mont. Inc.*, 2008 MT 283, ¶ 49, 345 Mont. 336, 190 P.3d 1111.  Such circumstances exist "if a

4

defaulting party, by breaching the contract, also breaches a duty which he owes to the other party independently of the contract." *Boise Cascade Corp. v. First Sec. Bank*, 183 Mont. 378, 392, 600 P.2d 173, 181 (1979). Separate tort liability depends on whether the breaching party violated a legal duty that would exist in the absence of a contract. *Boise Cascade Corp.*, 183 Mont. at 392, 600 P.2d at 181-82 (citing *Battista v. Lebanon Trotting Assn.*, 538 F.2d 111 (6th Cir. 1976)). Liability imposed under a statute exists independent of contractual duties concerning the same subject matter. *Abraham v. T. Henry Constr., Inc.*, 249 P.3d 534, 540 (Or. 2011). There must be active negligence or misfeasance to support an independent tort claim. *Garden City Floral Co.*, 126 Mont. at 543, 255 P.2d at 356 (citations omitted) ("There must be some breach of duty distinct from breach of contract.").

### A. Constructive Fraud and Deceit

¶9 Montana's constructive-fraud statute defines constructive fraud as:

> (1) any breach of duty that, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under the person in fault by misleading another person to that person's prejudice or to the prejudice of anyone claiming under that person; or

> (2) any act or omission that the law especially declares to be fraudulent, without respect to actual fraud.

Section 28-2-406, MCA. In order to make out a prima facie case of constructive fraud, a plaintiff must establish the following elements: a representation; the falsity of that representation; the materiality of that representation; the speaker's knowledge of that representation's falsity or ignorance of its truth; the hearer's ignorance of that representation's falsity; the hearer's reliance upon the truth of that representation; the hearer's right to rely upon that representation; and the hearer's consequent and proximate

5

injury or damage caused by reliance on that representation. *White v. Longley*, 2010 MT 254, ¶ 28, 358 Mont. 268, 244 P.3d 753 (citing *Town of Geraldine v. Mt. Municipal Ins. Auth.*, 2008 MT 411, ¶ 28, 347 Mont. 267, 198 P.3d 796). Montana's deceit statute provides, in relevant part:

> (1)  One who willfully deceives another with intent to induce that person to alter the person's position to the person's injury or risk is liable for any damage that the person suffers.
>
> (2)  A deceit, within the meaning of subsection (1), is either:
>
>> (a)  the suggestion as a fact of that which is not true by one who does not believe it to be true;
>>
>> (b)  the assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;
>>
>> (c)  the suppression of a fact by one who is bound to disclose it or who gives information of other facts that are likely to mislead for want of communication of that fact; or
>>
>> (d)  a promise made without any intention of performing it.

Section 27-1-712, MCA.

¶10    In support of her constructive fraud and deceit claims, Dewey contends that at the time she and Stringer entered into the Agreement, Stringer informed her that he was in the process of selling a home he owned in California, but that execution of the Agreement did not depend upon that sale. Stringer also purportedly told Dewey that he had sufficient funds to close on her home. Based on these representations, Dewey alleges that she agreed to purchase another home for herself and her daughter. Dewey further alleges that Stringer purchased property located in Boulder, Montana while living in her home, even though he claimed to be broke at the time he moved out. Based on this conduct, Dewey states that she

6

"now believe[s] that Mr. Stringer was intentionally false and misleading in his statements and representations . . . about his intention to purchase her home." She also "think[s] Mr. Stringer's conduct was malicious."

¶11 The District Court dismissed Dewey's tort claims on the ground that her injuries resulted strictly from Stringer's breach of contract. The court reached this conclusion after applying our holding in *Story v. City of Bozeman*, 242 Mont. 436, 450-52, 791 P.2d 767, 775-76 (1990), where we determined that in order to establish a duty of good faith and fair dealing, absent specific statutory provisions, the parties must have a "special relationship." The court concluded there was "no special relationship between Dewey and Stringer to establish a duty independent of the buy-sell agreement." The court reasoned that "[b]ecause Dewey's claim for constructive fraud fails to establish a duty independent of the buy-sell agreement, she cannot establish the elements for constructive fraud." Likewise, the court determined that the issues raised under Dewey's deceit claim "fall squarely within the provisions of the buy-sell agreement which specifically provided Dewey a remedy when Stringer breached the contract. Whether Stringer deceived Dewey when he entered the contract is irrelevant." Accordingly, the court dismissed Dewey's tort claims and determined that Dewey had exercised her contractual remedy by retaining the $2000 earnest-money deposit following Stringer's breach.

¶12 Dewey acknowledges that the Agreement enumerates certain remedies in the event of a breach, but argues that those remedies are not exclusive and do not bar her ability to pursue additional claims in tort. She cites *Glacier Campground v. Wild Rivers, Inc.*, 182 Mont. 389, 403, 597 P.2d 689, 696 (1978), for the rule that "[i]n the absence of a contractual provision

7

expressly limiting the remedy or remedies available, a party may pursue any remedy which law or equity affords, as well as the remedy or remedies specified in the contract." Dewey argues that § 28-2-406, MCA (constructive fraud), and § 27-1-712, MCA (deceit), provide statutory duties independent of the Agreement—duties not to lie and deceive. She also contends that the District Court's reliance on the "special relationship" test in *Story* is misplaced because she has not claimed tortious breach of the covenant of good faith and fair dealing.

¶13 Stringer contends that no duty independent of the Agreement exists in this case. He argues that an independent duty arises "primarily from claims arising out of professional obligation[s] to a client or to one's fiduciary obligations," but that "[t]his Court has not found such a duty in an arm's length transaction in which the parties have equal bargaining power." Stringer offers that he would have been under no duty to truthfully describe whether he could buy Dewey's property if he did not agree to buy it, and that he would have had no duty to accurately describe his finances to Dewey if not for the Agreement. Stringer argues that because his liability in this case arises strictly under contract, Dewey cannot pursue a remedy beyond those provided in the Agreement.

¶14 We have held that, even if an action sounds in contract, "'tort-type damages are . . . available for traditional contract-related torts such as fraud, fraudulent inducement, and tortious interference with a contract.'" *Corp. Air*, ¶ 49 (citations omitted). A fraud-based claim is not precluded by the fact that a party may also make a contract claim based on the same events. *Corp. Air*, ¶ 50 (dismissal of Corporate Air's tort claims by the district court on the ground that recovery under a contract theory precludes recovery under a tort theory was

8

error). "'The incidental fact of the existence of the contract . . . does not negative the responsibility of the actor when he enters upon a course of affirmative conduct which may be expected to affect the interests of another person.'" *Jim's Excavating Serv. v. HKM Assocs.*, 265 Mont. 494, 502, 878 P.2d 248, 253 (1994) (citation omitted).

¶15    Based on our precedent, the prohibitions on fraudulent and deceitful conduct under Montana law are not negated simply because the parties have entered into a contract concerning the same subject matter. Section 27-1-712, MCA, sets forth an independent statutory prohibition on the willful deception of another with the intent to induce that person to detrimentally alter that person's position. Section 28-2-406, MCA, defining constructive fraud, requires a plaintiff to establish a duty independent of the statute to implicate the statute. *See H-D Irrigating, Inc. v. Kimble Props., Inc.*, 2000 MT 212, ¶ 25, 301 Mont. 34, 8 P.3d 95. Our constructive fraud cases make clear that such a duty exists in fiduciary relationships, *Morrow v. Bank of Am., N.A.*, 2014 MT 117, ¶ 63, ___ Mont. ___, ___ P.3d ___; *Rowland v. Klies*, 223 Mont. 360, 369, 726 P.2d 310, 316 (1986), certain commercial transactions, *McJunkin v. Kaufman & Broad Home Sys.*, 229 Mont. 432, 439, 748 P.2d 910, 915 (1987), and other "special circumstances," *H-D Irrigating, Inc.*, ¶ 25 ("special circumstances may exist where one party has acted to mislead the other in some way"). Significant misrepresentations made in the course of executing a buy-sell agreement may give rise to a constructive fraud claim. *See H-D Irrigating, Inc.*, ¶ 25 (special circumstances exist "where sellers [of real property], by words or conduct, create a false impression concerning serious impairment or other important matters and subsequently fail to disclose the relevant facts.").

9

¶16 However, we need not conduct further analysis on these claims because we conclude that Dewey has failed, in any event, to set forth sufficient evidence to satisfy her burden to avoid summary judgment. In her complaint and supporting affidavit, Dewey offers several conclusory and speculative assertions regarding Stringer's financial position and intentions of performing as he represented. Dewey claims that she "now believes that Mr. Stringer was intentionally false and misleading in his statements and representations," and that she "think[s] Mr. Stringer's conduct was malicious." Summary judgment cannot be avoided by offering mere speculation. *Hiebert v. Cascade Co.*, 2002 MT 233, ¶ 45, 311 Mont. 471, 56 P.3d 848. We conclude that Dewey's subjective beliefs about Stringer's statements and the fact that he purchased a different piece of property after agreeing to purchase Dewey's, without more, is insufficient evidence to establish constructive fraud or deceit here. Although the District Court dismissed Dewey's claims under a different analysis, "[w]e will not reverse a district court when it reaches the right result, even if it reached that result for the wrong reason." *Wells Fargo Bank v. Talmage*, 2007 MT 45, ¶ 23, 336 Mont. 125, 152 P.3d 1275 (citation omitted). Summary judgment was appropriate on Dewey's constructive fraud and deceit claims.

**B. Negligence**

¶17 Section 27-1-701, MCA, provides:

> Except as otherwise provided by law, each person is responsible not only for the results of the person's willful acts but also for an injury occasioned to another by the person's want of ordinary care or skill in the management of the person's property or person except so far as the person has willfully or by want of ordinary care brought the injury upon the person.

Relatedly, § 28-1-201, MCA, which sets out Montana's general duty of care, states:

"Every person is bound, without contract, to abstain from injuring the person or property of another or infringing upon any of another person's rights."

¶18    The District Court dismissed Dewey's negligence claim for many of the same reasons it articulated in dismissing her constructive fraud and deceit claims—primarily that they all "arose out of the contract." The court also explained that "Stringer's duties as a tenant . . . were set forth in the buy-sell agreement," and any obligation to maintain the property was governed by the Agreement. Similarly, Stringer argues that the liability Dewey seeks to impose arose only as a result of his entry into the Agreement, offering that he "would not be obligated to pay for the condition of the property pursuant to a negligence theory had he closed." Dewey counters that § 27-1-701, MCA, imposed upon Stringer an independent duty "to maintain the property and use ordinary care in its occupancy . . . regardless of what is stated in the Agreement." She asserts that Stringer's negligence resulted in over $11,000 worth of property damage to her trees and plants, toilets, sinks, showers, stove, water filters, and well.

¶19    Similar to our discussion above, §§ 27-1-701 and 28-1-201, MCA, set forth a clear statutory duty to exercise ordinary care to avoid injuring the property of another. We have previously permitted a plaintiff to recover under a negligence theory for physical damage to property resulting concurrently with a contractual breach. *Bos v. Dolajak*, 167 Mont. 1, 8, 534 P.2d 1258, 1261 (1975). In *Bos*, the plaintiffs contracted with the defendants for the erection of a silo. The defendants completed the project, but within hours, the silo blew down during a windstorm and was mostly destroyed. *Bos*, 167 Mont. at 4, 534 P.2d at 1259. Under these facts, we determined that the defendants' negligence in performing this work

11

entitled the plaintiffs "to go to the jury with instructions on damages relating both to breach of contract and to negligence." *Bos*, 167 Mont. at 8, 534 P.2d at 1261 (citation omitted).

¶20     The potentially independent nature of the duty imposed under negligence law in a contract situation was also evident in *Quitmeyer v. Theroux*, 144 Mont. 302, 395 P.2d 965 (1964).   There, the plaintiffs alleged that they had entered an oral contract with the defendants whereby the defendants agreed to care for and manage the plaintiffs' apartment complex.  *Quitmeyer*, 144 Mont. at 304, 395 P.2d at 966.  A door was left open to the apartment complex, causing the water pipes and radiators to freeze and rupture, which extensively damaged the interior.  *Quitmeyer*, 144 Mont. at 306-07, 395 P.2d at 967.  The plaintiffs brought their claim three years after these damages were sustained.  On appeal, the plaintiffs argued that their claim sounded in contract and, therefore, was governed by the contract statute of limitations.  *Quitmeyer*, 144 Mont. at 310, 395 P.2d at 969.  We disagreed, holding that the parties had failed to form an oral contract.  *Quitmeyer*, 144 Mont. at 308-09, 395 P.2d at 968.   We explained "that the pleadings and proof leave us with a clear impression that plaintiffs' claim for relief was based strictly upon defendants' negligence in caring for the damaged building.  The claim being based on negligence would not come within a statute of limitations concerning contracts." *Quitmeyer*, 144 Mont. at 311, 395 P.2d at 970.

¶21     *Quitmeyer* demonstrates that when property is allegedly damaged by another's want of ordinary care, a cause of action may sound in negligence in the absence of a contract.  *Bos* demonstrates that negligence liability may exist even if the parties have entered into contract concerning the same subject matter.  Here, Dewey alleges that Stringer negligently caused

12

significant damage to her home during his occupancy. She has raised concrete facts that, if proven, would establish "active negligence" on the part of Stringer. *See Garden City Floral Co.*, 126 Mont. at 543, 255 P.2d at 356 (citations omitted). Stringer's argument that Dewey's claim would disappear if he had followed through with the Agreement and purchased her home is unavailing. It simply advances the notion that Dewey could not sue Stringer for trashing what would have become *his own* damaged property after closing. Stringer's potential liability for the damaged property is separate from his obligation under the Agreement to purchase the property and is broader than his obligation under the addendum to maintain the property "in normal working condition." Nor does Stringer cite relevant authority for his premise that the Agreement supersedes or supplants his statutory duty to avoid negligently injuring Dewey's property. Thus, we conclude that the District Court erred in dismissing Dewey's negligence claim on the ground it arose solely out of duties imposed under the Agreement.

¶22    Stringer maintains that "[i]f the Court accepts [Dewey's] position, it would endorse granting tort damages in almost every breach of contract case." We do not agree. There is a fundamental difference between breaching a contractual duty and committing a tort. As the Oregon Supreme Court concisely explained, "Contract obligations are 'based on the manifested intention of the parties to a bargaining transaction,' whereas tort obligations are 'imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others.'" *Abraham*, 249 P.3d at 538 (citations omitted) (emphasis omitted). The breach of a purely contractual duty does not

constitute the sort "active negligence or misfeasance" necessary to impose liability under tort law. *See Garden City Floral Co.*, 126 Mont. at 543-44, 255 P.2d at 356.[1]

¶23 Lastly, Stringer argues at length that the disjunctive list of remedies in the Agreement provides the exclusive remedy in this case. While we do not here consider the effect of the remedies provision as it applies to Stringer's alleged breach of the Agreement, we note that the listed remedies apply *only* to the Buyer's "refus[al] or neglect[] to consummate the transaction . . . ." There is no mention therein of a remedy in the event that the Buyer happens to damage the subject property. Also, both the rental arrangement and

---

[1] See also the discussion of this issue in *Abraham*, 249 P.3d at 540-41: "Defendants argue that this approach undermines the distinction between contract and tort and would permit every breach of contract to be brought as a tort claim. Defendants are incorrect. An example will help demonstrate the difference between actions taken in the performance of a contract that can be the basis for a contract claim only, and those that may also provide a basis for a tort claim. If an individual and a contractor enter into a contract to build a house, which provides that the contractor will install only copper pipe, but the contractor installs PVC pipe instead (assuming both kinds of pipe comply with the building code and the use of either would be consistent with the standard of care expected of contractors), that failure would be a breach of contract only. That is so because the contract defined the contractor's obligation to use a particular material (and no other), which the contractor then failed to do. *See Georgetown [Realty v. Home Ins. Co.,* 313 Ore. 97, 106, 831 P.2d 7, 11-12 (Or. 1992)] (stating principle). If the failure to install the copper pipe caused a reduction in the value of the house, the plaintiff would be able to recover that amount in an action for breach of contract. That would be a claim that, as this court stated in *Georgetown*, 'is based *solely* on a breach of a provision in the contract[.]' 313 Ore. at 106, [831 P.2d at 12] (emphasis added). On the other hand, if the contractor installed the PVC pipe in a defective manner and those pipes therefore leaked, causing property damage to the house, the homeowner would have claims in both contract and tort. The homeowner could recover in contract both for the failure to install copper pipe and for the failure to perform the contract in a reasonably skillful manner. *See Cabal v. Donnelly*, 302 Ore. 115, 121-22, 727 P.2d 111 (1986) (illustrating contract claim). The homeowner also would have a tort claim for property damage to the house caused by the leaking pipes if the homeowner could prove that the contractor's failure to meet the standard of care caused the property damage. *See id.* ('We see no reason to preclude a [home buyer] from claiming damages [from the home builder] in contract and in tort.') (quoting *Woodward v. Chirco Construction Co.*, 141 Ariz. 514, 515-16, 687 P.2d 1269, 1271 (1984)). In those circumstances, the obligation to install copper instead of PVC pipe is purely contractual; the manner of installing the pipe, however, implicates both contract and tort because of the foreseeable risk of property damage that can result from improperly installed pipes." (Footnotes and paragraph break omitted.)

corresponding contractual obligations to maintain the property are provided in the separate addendum. Thus, we cannot conclude that the disjunctive remedies provision, which applies by its terms to Stringer's failure to close, limits Dewey's ability to maintain a negligence action for property damage incurred during Stringer's occupancy.

¶24 Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.

/S/ JIM RICE

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER