No. 00-465

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 44

ROGER E. EARL, Guardian and Conservator

of Viola C. Earl,

Plaintiff and Respondent,

v.

JOHN W. BEAGER, RACHEL A. BEAGER,

RUSSELL S. EARL, JOHN CONOVER, JR.,

and ALAN C. CONOVER,

Defendants and Appellants.

_____

JOHN CONOVER, JR., and ALAN C. CONOVER,

Counterclaimants/Appellants,

v.

ROGER E. EARL, Guardian and Conservator

of Viola C. Earl,

Counterdefendant/Respondent.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Beaverhead,

The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Robert T. Cummins, Attorney at Law, Helena, Montana

For Respondent:

Mark David Hoffman, Attorney at Law, Dillon, Montana

Submitted on Briefs: November 2, 2000
Decided: March 20, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 John Conover, Jr., and Alan C. Conover appeal from the Findings and Order issued by the Fifth Judicial District Court, Beaverhead County, granting summary judgment in favor of Roger E. Earl. We affirm.

¶2 The Conovers raise the following issues on appeal:

¶3 1. Did the District Court err in determining that the Conovers' lease to the Tom Sweet Ranch was properly terminated?

¶4 2. Did the District Court err in failing to address the Conovers' contention that letters written by Viola C. Earl constituted a holographic will?

BACKGROUND

¶5 On August 28, 1980, Viola C. Earl entered into a lease agreement with Russell S. Earl, her husband, and the Conovers concerning real property known as the Tom Sweet Ranch.

Russell Earl is now deceased. The term of the lease was 99 years. The lease also provided that, upon expiration of the lease term, the lease would be extended under the same conditions to any members of the Conover family. The agreement also provided that "[i]n case of need this lease is subject to recall on demand by Viola C. Earl only."

¶6 In a letter dated November 2, 1998, Roger Earl, the stepson of Viola Earl, notified the Conovers that he was terminating the lease agreement. Roger stated that Viola was in a nursing home, that she did not have the assets to bear her expenses, and that in order to qualify for federal benefits she needed to liquidate her property. Roger had been appointed Viola's guardian and conservator on May 19, 1998. In a letter dated November 30, 1998, the Conovers informed Roger that they were rejecting his notice of termination. The Conovers contended that the Tom Sweet Ranch had been conveyed to them in fee.

¶7 On January 26, 1999, Roger filed a complaint requesting that the District Court declare the lease agreement properly terminated and issue a judgment quieting title to the ranch. On March 22, 1999, the Conovers filed an answer and counterclaim contending that Viola, by various documents and correspondence, had leased and gifted to them all of her interest in the Tom Sweet Ranch. The documents and correspondence the Conovers were referring to included, among others, a letter from Viola dated December 1984, in which she stated, in relevant part, the following:

> At the end of this Age the whole world will return to Divine Law. We don't know where the Heavenly Father and His Son will put each of us. It may be far from where we now are. So we can not make arrangements for anything past the end of this Age.
>
> It has been, and still is, my intention that you, John and Alan, are to have the use of the ranch as long as this Age lasts. If we ever come back there we will need only our camper, as it is compact and convenient, and self contained.
>
> The house and other buildings are to be for your use, so you do what you wish with the house.
>
> Let's not raise the lease until it seems necessary, and you use anything there that will help you out. . . .
>
> . . . .

Since we don't plan to be there any more, and with expenses going up all the time here, too, I can't help much with expenses there. But it is fine if you wish to fix it for your use. According to Divine Law all land belongs to our Great Creator, and our homes and his land are not taxable. So I will never sell it from you. As far as it is in my power it is for you folks to use till the end of this Age. According to the lease no one outside your family is ever to be there using the land or the buildings. It is for your use only.

I hope this is satisfactory with you.

--Viola C. Earl (signed)

P.S. Keep this letter filed with your lease.

¶8 Roger filed a Motion for Declaratory Judgment and/or Summary Judgment on July 9, 1999. The District Court held a hearing on the motion on March 2, 2000. On March 17, 2000, the District Court concluded that Roger was entitled to a declaratory judgment terminating the lease and a judgment quieting title to the property as against the Conovers subject to their right of first refusal. The Conovers filed a motion to amend contending that the court must hold a trial to resolve the effect Viola's letters had on the original lease. The District Court denied the Conovers' motion and issued its Judgment. The Conovers appeal.

## STANDARD OF REVIEW

¶9 We review a district court order granting summary judgment *de novo* applying the same evaluation as the district court pursuant to Rule 56, M.R.Civ.P. *See Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In *Bruner*, we set forth our inquiry:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Bruner, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).*

## ISSUE ONE

¶10 Did the District Court err in determining that the Conovers' lease was properly terminated?

¶11 In a brief supporting his motion for summary judgment, Roger contended that the lease provided for a right of termination upon need; that need was shown based on Viola's nursing home expenses; and that notice of termination was properly given. The Conovers responded that statements made by Viola in her December 1984 letter to them, set out in relevant part above, raised material issues of fact with regard to whether Viola gifted the ranch to the Conovers or whether she amended the lease and specifically relinquished her right of termination. The District Court concluded that Roger was entitled to a judgment terminating the lease based on need.

¶12 On appeal, the Conovers contend that Viola's letters amended the termination provision of the original lease agreement because they make clear her intention that the Conovers should have the ranch. Roger contends that Viola's letter does not modify the lease. Roger notes that the letter reaffirms the existence of the lease by referring to the agreement between the parties as a lease and discussing the Conovers' "use" of the property. Roger also states that the lease was already "in a sense, a lease in perpetuity because it allows for renewal at the end of the ninety-nine year period so long as the property stays in the Conover family." Roger insists that nothing in Viola's letters purports to modify the right of termination in case of need or manifests an intent to gift the ranch to the Conovers.

¶13 The Conovers appear to be contending that the letter is either evidence that Viola intended to give them the ranch or evidence that Viola intended to amend the lease to relinquish her right of termination based on need. We will address each contention separately. In doing so, we are mindful that in a summary judgment proceeding "[a]ll reasonable inferences which may be drawn from the offered proof must be drawn in favor of the party opposing summary judgment." *Johnson v. Barrett*, 1999 MT 594, ¶ 8, 295 Mont. 254, ¶ 8, 983 P.2d 925, ¶ 8.

¶14 The Conovers' argument that Viola's 1984 letter is evidence that she intended to terminate the lease and give them the ranch is specious. The Conovers rely on Viola's statement in her December 1984 letter that "[i]t has been, and still is, my intention that

you, John and Alan, are to have the use of the ranch as long as this Age lasts." However, as Roger notes, the lease already allowed the Conovers to renew on the same conditions upon expiration of the lease term. Thus, granting the Conovers use of the ranch for "as long as this Age lasts" does not indicate that Viola intended to give them the ranch. More importantly, as the District Court observed, Viola consistently used the term "use" throughout the letter and she also repeatedly reaffirmed the continued existence of the lease by stating, among other things, that, "[a]ccording to the lease no one outside of your family is ever to be there using the land or the buildings." Lastly, we note that John Conover claimed, in an affidavit opposing summary judgment, that Viola's letter constituted a gift "subject to [the Conovers] paying a lease payment for 99 years." We have previously stated that "[t]o be a gift, a transfer of property must be irrevocable, complete, without adequate consideration or full consideration, and unmistakably intended to divest the donor of the title, dominion and control over the property." *Estate of Parini v. Montana Dept. of Revenue* (1996), 279 Mont. 85, 92, 926 P.2d 741, 745. Granting the Conovers the use of the ranch subject to a "lease payment for 99 years" is simply a lease, nothing more.

¶15 Alternatively, the Conovers contend that, on the basis of her December 1984 letter, Viola intended to amend or modify the original lease to relinquish her right of termination. Conovers rely on the following statement from Viola's December 1984 letter: "So I will never sell it from you. As far as it is in my power it is for you to use till the end of this Age."

¶16 The only reasonable inference we can draw in favor of the Conovers from Viola's 1984 letter is that at the time she wrote the letter she had a present intent not to exercise her right of termination in the future. In order for Viola's 1984 written letter to be a valid modification of the lease, however, it must be a contract supported by sufficient consideration. *See* §§ 28-2-102 and -1602, MCA (providing that a contract in writing may only be altered by a contract in writing or by an executed oral agreement). A mere statement of present intent to perform or not perform an act in the future is not a contract. What the Conovers had from Viola Earl, if anything, was simply a gratuitous promise. Such a promise cannot be enforced at all. *See Boise Cascade Corp. v. First Sec. Bank of Anaconda* (1979), 183 Mont. 378, 391, 600 P.2d 173, 181.

## ISSUE TWO

¶17 Did the District Court err in failing to address the Conovers' contention that letters

written by Viola Earl constituted a holographic will?

¶18 As Roger correctly observes, whether letters written by Viola Earl constitute a holographic will is not at issue in this dispute. Viola passed away *after* the court had already issued its order granting summary judgment in Roger's favor. The issue of this case is whether the lease agreement was properly terminated, not whether Viola Earl's estate was properly distributed.

¶19 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER
