V. E. QUITMEYER and LOIS QUITMEYER, Plaintiffs and Respondents, v. WARREN G. THEROUX and ROY McLAREN, and THEROUX and McLAREN, a Co-partnership, Defendants and Appellants.

No. 10621.

Submitted February 3, 1964. Decided July 13, 1964.

Rehearing Denied November 10, 1964.

395 P.2d 965.

Mr. Justice Adair dissented.

Leonard H. Langen (argued), Glasgow, for appellants.

Erickson & Richards, Jerrold Richards (argued) Helena, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an action for damages brought by plaintiffs, V. E. Quitmeyer and Lois Quitmeyer, hereinafter referred to as respondents, against defendants Warren G. Theroux and Roy McLaren individually and as co-partners, who will hereinafter be referred to as appellants.

The jury's verdict was for respondents. Judgment was entered. It is from this verdict and judgment that this appeal has been perfected.

The controversy in question arose from claimed improper

performance of duties by appellants under an alleged oral agreement whereby appellants were to manage an apartment building owned by respondents. Negligent care and maintenance combined with freezing weather caused the water pipes to burst and flood the premises. This resulted in damage for, which the jury awarded respondents the sum of $9,000.

Appellants were engaged in the realty business in Poplar, Montana, during the year 1956 and the early part of 1957. Respondents had lived in that city, but before this controversy arose they had moved to Deer Lodge. Respondents' former home in Poplar had been remodeled into a four-family apartment house and was rented out. This left respondents with the problem of rent collection and the responsibility of general care and maintenance. Thereupon respondents resolved to sell and wrote appellants on April 26, 1956, asking if they were interested in accepting a listing for the sale of the property. The sale price asked was $20,000. To this inquiry appellants made no reply. No further contact was made until the late spring or early summer of 1956. At that time, and the exact date is uncertain, there was a meeting between respondent, Dr. Quitmeyer, and appellants in the back of Corbin's drug store in the City of Poplar.

We leave, for a time, the undisputed facts and proceed into the areas of contention. The fact that a meeting was held is beyond question, but that which was discussed and that which was decided upon are uncertain. We can only relate the story as was presented by testimony and by the subsequent actions of the parties. Respondents claim that it was then and there orally agreed that appellants would undertake and see to "the management and rental of this property, the apartments, and seeing to it that the lawn would be mowed, storm windows would be put on, the apartments would be kept up in between rentals so it would be ready for new occupants, and general management and care." Appellants, however, offer testimony diametrically opposed to the contentions of respondent. They

assert that the discussion was confined to the problem of sale. They contend that there was at no time any conversation concerning their management of the property. Therefore, it can be seen that the crux of this matter is whether there was an oral contract for the management of the damaged building. As to this we have only the testimony of the parties involved, for no writing of any significance was executed for a period of two or three months. However, during part of the time involved, it appears that a Mr. Hagadone was performing some of the duties of a caretaker for respondents.

On August 15, 1956, appellants wrote to respondents and stated that they thought they could get a buyer for the property. At the same time they enclosed a "Business Opportunity and Real Property Listing Contract" whereby, upon its execution, appellants would be empowered to sell the property for $16,000. This contract was to give appellants an exclusive listing for a period to run from August 15, 1956, through November 15, 1956. This instrument was duly executed and returned by respondent, Dr. Quitmeyer.

On August 18, 1956, further correspondence was had between the parties, but this only pertained to financing and conditions of sale. Letters of August 27, 29, and September 11, 1956, were in the same vein and contained no mention of management. However, on August 27, 1956, Mr. Hagadone wrote respondent and stated: "I am sending you the rent money for the upstairs and basement appts. for the past two weeks. Mr. McClellan [sic McLaren] has the keys to the appts. I no longer live thear [sic]."

It is during the time covered in the "Listing Contract" that we see some evidence of dominion over the property by appellants. After Hagadone left, appellants received the rent and remitted it to respondent, Dr. Quitmeyer. For their effort appellants deducted 10 percent of the remittance. Beyond this service, and an inquiry to Dr. Quitmeyer of October 4, 1956, concerning the possibility of his having the washing machine

repaired, there was no other evidence of their engaging in any managerial service. Appellants explained their rent collections by stating that they had been requested to do so by Dr. Quitmeyer's letter of August 29, 1956. They claimed that there was no prior agreement to collect rents or to deduct for the service. Appellant Theroux testified that the reason for their collecting the rents and seeking renters was: "Well, in order to show that this property was income-producing property, we of course were interested to see that the apartments were rented, if possible. Pretty hard to try and sell income-producing piece of property that was supposed to have renters in it, and when they would go look it over, there wouldn't be anybody in the apartments. Through my capacity in the Chamber of Commerce in Poplar, Montana, we were being asked by people moving into town about places to rent or buy, and of course, there were school teachers coming in about that time of year looking for a place to live * * *."

By the end of October the last tenant moved out. All potential buyers had rejected the property. The "Listing Contract" expired on November 15, 1956. Four days later appellants wrote respondent, Dr. Quitmeyer, the following letter: "Enclosed is Mrs. Seago's check. The other family that was living in the apartment house took off without paying. However, I got a letter from her and she said she would send a check.

"There is no-one living in the building now. And renters are hard to find. I would suggest that a caretaker be found—if you wish, we will advertise for one." Respondents did not answer this letter. Appellants contend that they had nothing more to do with the property in question. There is no evidence of any further contact between the parties.

Sometime in the latter part of the month of January the employee hired to read the water meter for the City of Poplar noticed the basement door to the building open. Upon investigation he ascertained that the basement had several inches of water frozen over it. Inspection showed that the water pipes

and radiators had frozen and ruptured. The flooding that resulted had severely damaged the floors, walls, and fixtures. This conscientious city employee brought all this to the attention of respondents by mail. Respondent, Dr. Quitmeyer, immediately got in touch with his brother living in Poplar. At no time did respondents communicate with either appellant.

Almost three years from the date of the discovery of the damage, this suit was filed in district court. Appellants answered and defended by a general denial. They later moved the court to amend their answer by addition of a third defense. Said motion was granted. The third defense stated: "Defendants allege that any part of Plaintiff's claim which failed to accrue within two years before the commencement of Plaintiff's action is barred by the provisions of Sec. 93-2607, R.C.M.1947."

Appellants moved for a directed verdict on various grounds at the close of respondents' case and again at the close of testimony. Both motions were denied. Appellants upon appeal argue that the motions should have been granted. Of the various reasons put forth there are but two that we need to go into, since we are forced to the conclusion that the case must be reversed and dismissed. The questions involved are: (1) Does the evidence sustain the verdict, and, (2) Was the statute pleaded in appellants' third defense a bar to respondents' action?

█ As we have stated before, "We are long committed to the rule that 'we will not reverse the finder of fact unless the evidence clearly preponderates against it.'" Close v. Estate of Ruegsegger, 143 Mont. 32, 386 P.2d 739, 743; Marker v. Zeiler, 140 Mont. 44, 55, 367 P.2d 311, 317. This is a sound rule that should not be avoided lightly, but where there is insufficient evidence to support the conclusions of the finder of fact such a rule should not stand as a bar to justice.

█ In the case before us we see a claimed oral contract that was purportedly entered into in May or June of 1956. The stories told by the litigants are reconcilable as to everything except the existence of the oral contract. If this conflicting

testimony stood alone, the jury as finders of fact, could accept one version over another. However, this testimony was supplemented by both correspondence and action of the parties, all of which, when taken together, is consistent with one version and inconsistent with the other. We, as a reviewing court, in such an instance, look to the evidence as a whole to determine whether there is substantial evidence supporting the verdict rendered. We stated in Sands v. Superior Bldgs. Co., 136 Mont. 531, 535, 349 P.2d 314.

"The question for our decision then is whether plaintiffs' * * * theory constitutes the substantial evidence which is required to support the court's judgment. Substantial evidence, has been defined by this court as such evidence 'as will convince reasonable men and on which such men may not reasonably differ as to whether it establishes the plaintiff's case, and, if all reasonable men must conclude that the evidence does not establish such case, then it is not substantial evidence.' Adami v. Murphy, 118 Mont. 172, 179, 164 P.2d 150, 153, and cases cited therein." We, after looking to the correspondence and actions of the parties, cannot find substantial evidence to support this verdict. Neither the correspondence nor the actions of the parties are consistent with the existence of the alleged oral contract.

The correspondence leads to but one conclusion. The evidence there preponderates against the existence of a contract or any meeting of the minds concerning management functions on the part of appellants. This is crowned by the fact that within four days of the time the "Listing Contract" expired appellants wrote and suggested "that a caretaker be found—if you wish, we will advertise for one." This statement has the indicia necessary to corroborate appellants' contentions concerning the scope of the drug store discussion. It was not written at a time when there was any controversy in the offing. There appears to have been nothing in the writer's mind, at that time, to lead one to conclude he had agreed to manage and care for the prop-

erty in question. Any conclusion must be in the direction pointed out by appellants, namely, that they only discussed the sale of the property.

The "Listing Contract" itself is not evidence of any alleged oral agreement, for it is required by its terms to be in writing by operation of R.C.M.1947, § 13-606. This statute and the agreement itself are limited to the question of sale.

The actions of the parties also preponderate in favor of the proposition that there was no oral contract to maintain and care for the property. There were no communications of record, between the drug store meeting in May or June until the August 15, 1956, letter from appellants seeking a $16,000 listing. The record is devoid of respondents giving any directions or inquiry in this or any subsequent period, as to the care or condition of the property. Appellants' collection of rents during the period of the listing, and it appears to have been only during this period, was reasonably explained. Their story on that subject is not inconsistent with their duties in the matter of sale. This activity seems to have been the only isolated action remotely pointing toward respondents' contentions. Standing alone it might have been sufficient to sustain respondents' position, but here we have attendant circumstances and an explanation that manifestly reduce its weight.

Another act of the parties, that shows intent, is the failure of respondents to contact either or both of these appellants upon learning of this disaster. It is inconsistent with respondents' story for them to fail to inquire or remonstrate in the light of the alleged oral agreement. We have viewed the communication to respondents from the city employee that discovered the damage. Respondents could not have known all that had transpired and therefore ordinarily would have communicated with those in whom they had placed their trust. Their failure to inquire of appellants is another link in the chain supporting appellants' story. Also, it must be pointed out that this silence continued for almost three years, for until this action

was filed, respondents had failed to ever apprise appellants of their alleged liability.

We must therefore reverse the decision of the lower court, for we find as a matter of law that the evidence does not sustain the verdict.

In this case appellants, by amended answer, have pleaded the statutes of limitation. If the court below was in error on this subject there is no cogent reason why appellants should be put to the expense and vexations of another trial.

As was stated before, this action was filed three years after the damage to respondents property. Appellants contend that any part of respondents' claim which failed to accrue within two years before the commencement of respondents' action is barred by the provisions of R.C.M.1947, § 93-2607.

In Pappas v. Braithwaite, 117 Mont. 569, 574, 162 P.2d 212, it was stated:

"* * * [w]here the defendant has pleaded the statute of limitations the court may dismiss a suit when, as a matter of law, it cannot be maintained * * *. Where defendant has pleaded the statute and plaintiff's evidence shows his action is barred by limitations, it is proper to grant a nonsuit [citations omitted], and where * * * at the close of all the evidence in the case it appears that the action is barred by the statute it is proper to direct a verdict for defendant."

R.C.M.1947, § 93-2607, is a specific statute of limitation which states that an action must be brought "Within two years: * * * [in] 2 An action for injury to or for waste or trespass on real or personal property; * * *."

Respondents take the position that this statute of limitation does not bar their claim for relief because they have waived their action under tort theory and are suing on the implied contract. Respondents argue that "Where a tort is waived and an action brought on an implied contract, the statute of limitations applicable is that governing the latter form of action." Stagg v. Stagg, 90 Mont. 180, 186, 300 P. 539. All of

this is very true, but it is not a rule of law applicable to all cases. In those cases where the gravamen of the action is strictly *ex contractu* or *ex delicto* the statute of limitation applicable must necessarily be in conformity with the basis of the action. It appears that appellants contend that the basis for this action lies strictly *ex delicto*. With this contention we must agree. The case of Jackson v. Central Torpedo Co., 117 Okl. 245, 248, 246 P. 426, 428, 46 A.L.R. 338, seems to be in point with the question at bar. That case stands for the proposition that where a transaction complained of had an origin in contract that placed the parties in such a position that an alleged attempt to perform that contract resulted in the commission of a tort, then the gravamen of the action is in tort and not contract. The contract in such a case merely creates a state of things and furnishes the basis for the tort. The court there holds that the remedy is strictly *ex delicto* and not *ex contractu*. That court went on to say:

"This seems to be the correct rule, and, in the instant case, we are inclined to the opinion that no cause of action arose by reason of a breach of the contract. * * *

"Some authorities go to the extent of holding that under some conditions both an action ex delicto and ex contractu will lie, and that the plaintiffs may elect, but from the nature of the injuries here complained of we can conceive of no element of damage that might be based upon a breach of the contract; hence we conclude that the * * * action is one based upon tort and not upon breach of contract * * *."

In the instant case we find that the pleadings and proof leave us with a clear impression that plaintiffs' claim for relief was based strictly upon defendants' negligence in caring for the damaged building. The claim being based on negligence would not come within a statute of limitations concerning contracts.

The Legislature of this state has by statute decreed that certain actions founded on particular theories shall be barred

after a particular period of time. "In the construction of a statute the intention of the legislature * * * is to be pursued if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it." R.C.M.1947, § 93-401-16.

R.C.M.1947, § 93-2607, supra, is a particular statute. Appellants' plea that subsection 2 of that statute bars respondents' claim for relief is well-taken. We need not decide whether the complaint was framed as an action for waste or one for injury to real property, but we do recognize that the injury pleaded falls within the purview of this subsection. It might be pointed out that 67 C.J. Waste, § 35, p. 633 states:

"*Unless there is an express statutory limitation,* actions relative to waste [and we believe that waste would be included within the meaning of 'injury to * * * real * * * property.' See Strosnider v. Pomin, 32 Cal.App.2d 103, 89 P.2d 179.] are governed by the provisions relating to limitations of actions generally * * *." See also, 54 C.J.S. Limitations of Actions, § 168. (Emphasis supplied.) In any event the history of subsection 2 points out the particularity intended in the area of limitations of actions. To take any other view would render this statute a nullity. It could hardly be argued that the Legislature of the State of Montana cannot place limitations in time upon actions that are particular in nature. As was stated by New York courts in a series of cases concerning particular statutes of limitation:

"The form of the action, whether *ex contractu,* * * * *or ex delicto,* does not affect the case under this statute." Webber v. Herkimer & Mohawk St. R. R. Co., 109 N.Y. 311, 16 N.E. 358, 359; Loehr v. East Side Omnibus Corp., 259 App.Div. 200, 18 N.Y.2d 529, 531; Manning v. 1234 Corp., 174 Misc. 36, 20 N.Y.S. 2d 121, 122.

In Pappas v. Braithwaite, supra, at page 575, quoting from 34 Am.Jur., Limitation of Actions, § 12, pp. 22, 23, it was stated:

" 'Inasmuch as statutes of limitation are now generally regarded with favor by the courts, it is the consensus of the authorities that the defense of the statute of limitations stands upon the same plane as any other legal defense, and is one to which, in proper circumstances, all men are entitled as a right. The defense is not technical, but is deemed legitimate, substantial and meritorious.' " For this reason this court can see no compelling reason why this cause should be remanded for trial.

For the above-mentioned reasons we find that there was error and that this cause is reversed with directions to the district court to dismiss.

Reversed and dismissed.

MR. JUSTICE DOYLE concurs.

MR. CHIEF JUSTICE JAMES T. HARRISON did not participate in the determination of this appeal.

MR. JUSTICE JOHN C. HARRISON specially concurring:

Had this case been decided only on the evidence, I most certainly would not have joined this majority opinion in returning it to the district court for dismissal. However, as much as I am loathe to reverse a case where a jury has rendered its findings, I must agree with the majority in its interpretation of section 93-2607, R.C.M.1947. The defense of the statute of limitations is not a technical matter, and when properly raised, must be recognized by the court. The district court should have recognized this and granted a directed verdict at the close of respondents' case.

MR. JUSTICE ADAIR dissenting:

This case was tried to a jury. After hearing and considering the evidence before it and the instructions of the trial court the jury returned its verdict for the plaintiffs V. E. Quitmeyer and Lois Quitmeyer and assessed the plaintiffs' damages in the sum of $9,000. Thereupon judgment for the plaintiffs was entered

in accord with the jury's verdict. Such verdict and judgment should be respected. I have found no justification for reversing the judgment nor for directing the district court to dismiss the plaintiffs' law suit. Accordingly, I dissent to the majority opinion herein.