FILED

12/15/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0014

DA 20-0014

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 312

MARK PLAKORUS,

      Plaintiff and Appellant,

  v.

THE UNIVERSITY OF MONTANA,
a unit of the Montana University System,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-19-434
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Quentin M. Rhoades, Rhoades, Siefert & Erickson, PLLC, Missoula,
            Montana

      For Appellee:

            Quinlan L. O'Connor, Special Assistant Attorney General, Helena, Montana

Submitted on Briefs:  September 2, 2020

Decided:  December 15, 2020

Filed:

_____
               Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Former University of Montana women's soccer coach Mark Plakorus appeals the Fourth Judicial District Court's dismissal of his claims against the University after it refused to renew his contract upon finding alleged private contacts with Las Vegas escort services on Plakorus's phone records. Plakorus alleges that the University unlawfully disclosed confidential information from his personnel file, defamed him, interfered with his future business prospects, and violated his privacy rights. The District Court dismissed his tort claims, concluding that they all arose from the employment contract and were barred by the one-year statute of limitations for contract claims under § 18-1-402(2), MCA. We affirm in part, reverse in part, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

¶2 Prior to working at the University, Plakorus held numerous coaching positions for about seventeen years. From 2011 through 2018, the University employed him under contract as head coach of the women's soccer team. During Plakorus's tenure, the University gave him one performance evaluation. It was positive and indicated that he was "committed to the team's academic success; committed to complying with National Collegiate Athletic Association (NCAA) rules and regulations; committed to complying with UM policies and procedures; and committed to student welfare." The evaluation recognized Plakorus's work in effecting the team's "athletic turn-around" and success.

---

[1] Because the case was dismissed at the pleading stage, we draw on the facts alleged in Plakorus's Amended Complaint, which we take as true on consideration of his appeal. *See Stowe v. Big Sky Vacation Rentals, Inc.*, 2019 MT 288, ¶ 12, 398 Mont. 91, 454 P.3d 655.

¶3  In 2017, one or more players complained that Plakorus was messaging them too often or too late at night. The University's Title IX office undertook a "climate survey" and concluded that the complaints lacked merit. The investigation did, however, lead to an audit of Plakorus's University-issued cell phone.[2]  The audit allegedly found text messages and phone calls to and from individuals associated with Las Vegas escort services. Plakorus claims this finding is false.

¶4  On January 29, 2018, the University advised Plakorus it would not renew his employment contract, set to expire five months later. Plakorus alleges he was advised the University President would be notified of this decision and Plakorus should continue working as normal until then. The next day, the athletic director allegedly stated that he would advise the soccer players only that "it was time for [Plakorus] to move on," without disclosing any other information.

¶5  On February 1, 2018, the *Missoulian* newspaper published an article entitled, "UM women's soccer coach fired after texts to Vegas escort services surface." The article reported that the University had launched an investigation due to players' complaints about Plakorus's texting habits and asked Plakorus to resign after finding he had contacted escort services on recruiting trips to Las Vegas. Other local and national articles followed. Some included redacted copies of Plakorus's cell phone records, information from his personnel file, and information related to the non-renewal of his contract. Plakorus alleges the

---

[2] Upon providing Plakorus with a cell phone to be used for both personal and professional purposes, the University informed Plakorus it could audit the phone records, if necessary, for compliance with NCAA recruiting policies and procedures. Plakorus acknowledges the policy but alleges he was given no notice that the cell phone records could be audited for any other purpose.

3

University wrongfully and falsely implied in its communications with the media that he had committed acts of sexual misconduct, endangered his players' safety, and inappropriately used University resources. Plakorus claims that he has been unable to find a position coaching soccer at any level since leaving the University and has had to obtain lesser-paying employment outside of his preferred career.

¶6 Plakorus filed his Complaint on April 29, 2019, alleging violation of his constitutional right of privacy, defamation, and breach of contract. He filed an Amended Complaint on August 7, 2019, removing his breach of contract claim and adding claims for tortious interference, negligence, and invasion of privacy. The University moved to dismiss the Amended Complaint for lack of subject matter jurisdiction based on Plakorus's failure to first grieve his claims under § 18-1-402, MCA, and alternatively for failure to state a claim based on Plakorus's failure to timely file a complaint for contract claims pursuant to § 18-1-402(2), MCA.

¶7 The District Court granted the University's motion to dismiss pursuant to Mont. R. Civ. P. 12(b)(6), declining to rule on the 12(b)(1) grievance argument. The court reasoned that "[t]he filing date is more than one year after the alleged breach occurred and regardless of Plaintiff's failure to follow any grievance procedure, Plaintiff failed to timely file his Complaint under Mont. Code Ann. § 18-1-402(2)."[3] This appeal followed.

---

[3] The record before the District Court included the University's Grievance Policy and Procedures and Employee Personnel File Policy and Procedures; it did not include Plakorus's employment contract with the University or any personnel records. The District Court "decline[d] to consider matters outside of the Amended Complaint" when it ruled on the motion to dismiss.

4

## STANDARDS OF REVIEW

¶8 "We review de novo a district court's ruling on a M. R. Civ. P. 12(b) motion to dismiss." *Dickson v. Marino*, 2020 MT 196, ¶ 6, 400 Mont. 526, 469 P.3d 159 (citations omitted). We review a district court's conclusions of law for correctness. *Dickson*, ¶ 6 (citations omitted). A complaint fails to state a claim pursuant to Mont. R. Civ. P. 12(b)(6) if the plaintiff "would not be entitled to relief based on any set of facts that could be proven to support the claim." *Plouffe v. State*, 2003 MT 62, ¶ 8, 314 Mont. 413, 66 P.3d 316 (citation omitted). On review of a district court's dismissal pursuant to Mont. R. Civ. P. 12(b)(6), we construe all facts alleged in the complaint as true and in a light most favorable to the plaintiff. *Plouffe*, ¶ 8.

## DISCUSSION

¶9 Plakorus pleaded five counts in his Amended Complaint. Count I alleges that the University's acts and omissions violated his right to privacy under Montana Constitution Article II, Section 10, through the publication of his employment information. Count II alleges that the University defamed Plakorus when it released confidential personnel information and phone records and publicized materially false information about him "with the intent to besmirch Plakorus's character and destroy his career." Count III alleges intentional and willful tortious interference, claiming the University's actions "were calculated to cause damage to Plakorus's ability to obtain employment in his chosen field . . . without right or justifiable cause" and resulting in damages. Count IV alleges that the University breached its duty of ordinary care "in handling and maintaining confidential, private information about Plakorus" and is therefore liable for negligence. Finally,

5

Count V alleges invasion of privacy because the matters publicized were of a kind that: (a) would be highly offensive to a reasonable person; and (b) were not of legitimate concern to the public.

¶10 Relying solely on the factual allegations and these claims, the District Court concluded:

> The gravamen of [Plakorus's] Amended Complaint consist of the terms and conditions of his employment, including the documents within [his] personnel file, investigation into [his] work, and investigation into [his] University-issued cell phone. The auditing of [Plakorus's] University supplied cell phone and the public dissemination of information from [his] cell phone use and his employment status/history are the essence of [Plakorus's] claims and directly relate to [his] contractual relationship with Defendant. . . . The Court finds that [Plakorus] alleges no duty separate from duties under his employment contract, and [his] Amended Complaint sounds in contract. [Record citations omitted.]

¶11 Plakorus argues on appeal that his claims, as pleaded in the Amended Complaint and taken as true, were actionable under the Montana Constitution, Montana statutes, and Montana common law of torts because the duties existed separate from his employment contract and were violated after the University notified him it was terminating his employment relationship. He further argues that the contract was not before the court and it thus could draw no conclusion that the claims arose from its contents. He maintains that the University has not identified any contract language that would prevent disclosure of personnel information, prevent interference with future employment prospects, or create a duty to be truthful when disclosing results of investigations of employees to the public. Plakorus thus contends that the two-year statute of limitations for defamation claims pursuant to § 27-2-204(3), MCA, and the three-year statute of limitations applied to claims

6

"not founded upon an instrument in writing" under § 27-2-204(1), MCA, govern, and his claims are not foreclosed.

¶12    The University counters that duties owed to the general public do not create duties to individuals, and thus no relevant duty existed outside the contract. Though it acknowledges a general duty of ordinary care to others, the University argues that any duty to protect Plakorus's employment information arose only from specific contractual obligations governing employment information. The University posits that personnel information is necessarily part of employment—it exists solely because of the employment, has meaning due to the employment, and often becomes irrelevant upon discontinuation of the employment. The University maintains that, as an employee, Plakorus cannot divorce his personnel information from his contract for employment. It argues that the basis for each of Plakorus's claims is that his contract for employment was breached through personnel file mishandling.

    *1. Did the District Court properly conclude that Plakorus's theories of liability all sound in contract and are foreclosed by the one-year statute of limitations governing contract claims against the State?[4]*

¶13    The State of Montana is subject to suit in district court "on any claim or dispute arising out of any express contract" with the State or a state entity or officer. Section 18-1-401, MCA. Such claims are governed by Title 18, ch. 1, part 4, including a

---

[4] Plakorus also argues that the District Court *sua sponte* dismissed his claims without giving Plakorus notice that it was considering the statute of limitations and an opportunity to be heard in response. The University raised the statute of limitations when it moved to dismiss the initial complaint, but Plakorus argues that the University did not reassert this ground in its second motion. Based on our review, we conclude that Plakorus was not denied due process and do not address this argument further.

7

requirement to exhaust administrative procedures if provided in the contract. A plaintiff must file suit within one year after a final administrative decision or, if the contract provides no settlement procedure, within one year after the claim accrues. *See* § 18-1-402, MCA. State entities also are subject to general tort liability to the same extent as private parties. Section 2-9-102, MCA.[5] Liability for wrongful conduct resulting in a single injury may exist under both tort and contract claims. In such cases, a plaintiff may elect to pursue claims under either or both forms of action. *Thiel v. Taurus Drilling Ltd.*, 218 Mont. 201, 209, 710 P.2d 33, 38 (1985) (citation omitted); *Dewey v. Stringer*, 2014 MT 136, ¶ 8, 375 Mont. 176, 325 P.3d 1236 (citations omitted). Coexisting theories of tort and contract liability arise when "a defaulting party, by breaching the contract, also breaches a duty which he owes to the other party independently of the contract." *Dewey*, ¶ 8 (quoting *Boise Cascade Corp. v. First Sec. Bank*, 183 Mont. 378, 392, 600 P.2d 173, 181 (1979)). "Separate tort liability depends on whether the breaching party violated a legal duty that would exist in the absence of a contract." *Dewey*, ¶ 8 (citation omitted).

---

[5] The University makes considerable argument on appeal about the State's limited waiver of sovereign immunity for contract claims. The University does not claim that the State has immunity from tort claims. *See generally* Mont. Const. art. II, § 18 ("[t]he state . . . shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature"); § 2-9-102, MCA ("[e]very governmental entity is subject to liability for its torts and those of its employees acting within the scope of their employment or duties whether arising out of a governmental or proprietary function except as specifically provided by the legislature . . ."). We observe that tort claims against the State must be presented to the Department of Administration before a plaintiff may seek relief in court. Section 2-9-301, MCA. *See Cottonwood Hills v. Dep't of Labor & Indus.*, 238 Mont. 404, 407, 777 P.2d 1301, 1303 (1989). The University mentions this rule in passing but does not develop the point. The record is unclear whether Plakorus exhausted the administrative process, and we express no opinion on that question.

¶14 Tort and contract causes of action may not coexist where the duty allegedly breached arises solely under one. "The plaintiff may choose between a tort and contract cause of action only where the substance of the complaint and the nature of the action give [it] the right to choose." *Tin Cup Cty. Water v. Garden City Plumbing & Heating, Inc.*, 2008 MT 434, ¶ 30, 347 Mont. 468, 200 P.3d 60. The gravamen of the plaintiff's complaint, not the label the plaintiff attaches to it, governs the applicable law. *N. Mont. Hosp. v. Knight*, 248 Mont. 310, 314, 811 P.2d 1276, 1278 (1991) (citing *Erickson v. Croft*, 233 Mont. 146, 153, 760 P.2d 706, 710 (1988)). "Consequently, we look to the substance of the complaint to determine the nature of the action and which statute of limitations applies." *Tin Cup Cty. Water*, ¶ 30 (quoting *Travelers Indem. Co. v. Andersen*, 1999 MT 201, ¶ 15, 295 Mont. 438, 983 P.2d 999).

¶15 We held in *Weible v. Ronan State Bank*, 238 Mont. 235, 236-38, 776 P.2d 837, 837-39 (1989), that despite the alleged breach of a security agreement requiring notice before seizure of collateral, the complaint alleged damages based on trespass and wrongful removal of farm machinery: "Although the injuries to Weible may have originated in breach of contract, the acts causing his damages sound in tort. Therefore, the gravamen of the action is in tort, not contract, and the tort statute of limitations applies." Similarly, in *Quitmeyer v. Theroux*, 144 Mont. 304, 303-04, 307, 395 P.2d 965, 365-68 (1964), after a building's pipes burst and caused flooding, the building owner sued a party that allegedly entered an oral agreement to care for the building. We held that the claim was subject to the statute of limitations for actions in tort because the "claim for relief was based strictly upon defendants' negligence in caring for the damaged building."

9

*Quitmeyer*, 144 Mont. at 311, 395 P.2d at 970. The District Court in this case thus reasoned correctly that the applicable statute of limitations depends on whether each of Plakorus's claims sounds in contract or in tort.

¶16 As our case law makes clear, merely because a contractual relationship exists that gives rise to a set of events and a relationship between parties does not mean the only duties existing between those parties with respect to those events are in contract. *Quitmeyer*, 144 Mont. at 311, 395 P.2d at 970 (citation omitted). A party's claim sounds in contract if it relates to "the violation of a specific contractual provision[.]" *Tin Cup Cty. Water*, ¶ 30. But tort liability is "not negated simply because the parties have entered into a contract concerning the same subject matter." *Dewey*, ¶ 15. We held in *Dewey* that breach of a duty distinct from breach of contract may be premised on duties imposed by statute, such as the statutory prohibitions against fraudulent and deceitful conduct, §§ 28-2-406, 27-1-712, MCA, and the duty of ordinary care to avoid injuring the property of another, §§ 27-1-701, 28-1-201, MCA. *Dewey*, ¶¶ 14-15, 19-21. We explained the "fundamental difference between breaching a contractual duty and committing a tort[:]"

> Contract obligations are based on the manifested intention of the parties to a bargaining transaction, whereas tort obligations are imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others. . . . The breach of a purely contractual duty does not constitute the sort [of] active negligence or misfeasance necessary to impose liability under tort law.

*Dewey*, ¶ 22 (internal quotations and citations omitted).

10

*Right of Privacy, Invasion of Privacy, and Negligence*

¶17 We look first to Plakorus's privacy and negligence claims. Each claim alleges the improper release of personnel information and information the University gathered during its audit. Plakorus alleges that the University violated his constitutional right of privacy when it publicly released protected employment information. He alleges further that the University breached its duty of ordinary care in handling and maintaining confidential, private information about him, and that it invaded his privacy when it released that information, which was of a highly offensive nature and lacked legitimate public concern. Plakorus maintains that these are duties that exist outside the existence of the contract. *See State v. Burns*, 253 Mont. 37, 41, 830 P.2d 1318, 1321 (1992) (noting that Mont. Const. art. II, § 10, imposes a duty on the State to protect information in which there is a "reasonable expectation of privacy"); *North v. Bunday*, 226 Mont. 247, 255, 735 P.2d 270, 275 (1987) (noting that § 27-1-701, MCA, imposes a duty of ordinary care upon everyone); *Bd. of Dentistry v. Kandarian*, 268 Mont. 408, 413, 886 P.2d 954, 957 (1994) (citation omitted) (noting that the common law imposes a duty not to invade others' privacy through publication of false and highly offensive information).

¶18 Despite Plakorus's characterization of the claims, however, the alleged mishandling of Plakorus's employment information is based on duties that arise from Plakorus's employment relationship, his contract with the University, and the policies that govern it. *Billings Clinic v. Peat Marwick Main & Co.*, 244 Mont. 324, 338, 797 P.2d 899, 908 (1990). The University is correct that Plakorus's personnel information exists solely because of his employment, and Plakorus's claims that the University improperly released

11

such information arise out of the existence of the contract. Breach of an obligation that arises "from the parties' agreement and not by operation of law" does not give rise to a tort claim. *Milky Whey, Inc. v. Dairy Partners, LLC*, 2015 MT 18, ¶ 23, 378 Mont. 75, 342 P.3d 13. The University's duty to manage Plakorus's personnel information "would not exist in the absence of a contract[.]" *Milky Whey, Inc.*, ¶ 23.

¶19 Most significant to the claims, Plakorus's expectation of confidentiality in his personnel information and the University's obligation to properly maintain it both arise from duties of the contract. We have held that a public employee in a position of trust "had no reasonable expectation of privacy in an investigation into her abuse of that trust" and that records of that investigation thus were properly subject to public release. *Billings Gazette v. City of Billings*, 2011 MT 293, ¶¶ 24, 30, 39, 362 Mont. 522, 267 P.3d 11. The University would not have investigated Plakorus's phone records without the employment relationship. Plakorus did not have a reasonable expectation of privacy in that investigation because it related directly to his position of trust in his coaching relationship with female University students. He cannot escape the nature of his claims being in contract by characterizing them in tort. *N. Mont. Hosp.*, 248 Mont. at 314, 811 P.2d at 1278 (citing *Erickson*, 233 Mont. at 153, 760 P.2d at 710).

¶20 We accordingly conclude that the District Court correctly dismissed the claims for right of privacy, invasion of privacy, and negligence for failure to timely file under the one-year statute of limitations for contract claims against the state.

12

*Defamation and Tortious Interference*

¶21    In contrast, Plakorus's claims for defamation and tortious interference do not arise simply from the University's release of allegedly confidential personnel information.  He argues that after the University made its determination and gave notice that it would not renew his contract, it falsely characterized the findings of the investigation and implied that he had committed acts of sexual misconduct, endangered his players' safety, and inappropriately used University resources, intentionally interfering with his career.  The gravamen of these claims, taking their factual allegations as true, is that the University made accusations against Plakorus that were untrue and that it knew or should have known would "besmirch Plakorus's character and destroy his career."  The University's duties not to commit such acts arise from statutes and from common law, independently of any contract.  *See* Mont. Const. art. II, § 7 (providing for suits and prosecutions for libel and slander); §§ 27-1-701 (imposing the duty of ordinary care), 27-1-802 (defining libel), 27-1-803 (defining slander), MCA; *Kandarian*, 268 Mont. at 416, 886 P.2d at 959 (citations omitted) (noting that the common law imposes a duty not to intentionally interfere with business relations for the purpose of causing damage or loss without justifiable cause).

¶22    Taking Plakorus's allegations as true, we conclude that the University's contractual relationship with Plakorus is not controlling.  When the plaintiff alleges a duty imposed by law that does not depend on a contractual provision or breach of a contractual obligation, "the gravamen of the action is the breach of the legal duty rather than a breach of the contract, and so is a tort." *Billings Clinic*, 244 Mont. at 338, 797 P.2d at 908.  The Amended

13

Complaint states that the University made false accusations against Plakorus and that it knew or should have known these accusations would expose him to public ridicule and adversely affect his ability to work in future coaching positions at the university level. Plakorus's allegations of the University's acts and his injuries do not depend upon promises made in his employment contract. *Dewey*, ¶¶ 8, 21.

¶23 Even if the employment contract contemplated the University's release of information gathered during an internal investigation or audit, Plakorus's allegations that the University used such information to expose him to false claims and public ridicule and rendered him unable to secure future coaching jobs are rooted squarely in tort law. The contract cannot preclude other duties from arising during the ongoing relationship. *See Dewey*, ¶ 21 (concluding that "Stringer's potential liability for the damaged property is separate from his obligation under the Agreement to purchase the property and is broader than his obligation . . . to maintain the property 'in normal working condition.'"); *see also Klein v. State*, 2008 MT 189, ¶¶ 30-31, 343 Mont. 520, 185 P.3d 986 (noting that merely because a tort claim extends from a collective bargaining relationship does not mean an employer has "'carte blanche' to treat [the plaintiff] in any manner it sees fit, and then require her to submit any and all grievances to arbitration simply because she is an employee").

¶24 The University relies on *Town of Geraldine v. Mont. Mun. Ins. Auth.*, 2008 MT 411, 347 Mont. 267, 198 P.3d 796 ("*Geraldine*"), for its position that Plakorus's claims sound in contract. In *Geraldine*, a drilling company sued the town for breach of contract, negligent misrepresentation, and constructive fraud after the mayor allegedly instructed the

14

company to perform work beyond the scope of the contract. *Geraldine*, ¶ 3. The town sued its insurance provider, MMIA, after it was denied coverage based on policy exclusions, including one that denied coverage for breaches of contract. *Geraldine*, ¶¶ 5-6. We agreed with the trial court that the drilling company's tort claims sounded in breach of contract. Noting that the essence of the claim was that the mayor either amended the contract or made a new agreement, we concluded that the negligent misrepresentation claim thus was "nothing more than allegations that the contract was modified by the Mayor's request for the work to be done and an actual or implied promise to pay for that work." *Geraldine*, ¶¶ 23-25.

¶25     *Geraldine* is distinguishable because the contract in that case contemplated the conduct at issue—payment for services rendered. *Geraldine*, ¶¶ 19, 23-25, 31-32. Here, in contrast, Plakorus's claims for defamation and tortious interference, as discussed above, are entirely independent of the conduct contemplated by the parties' employment contract.

¶26     We therefore conclude that the District Court erred in dismissing the claims for defamation and tortious interference at the pleading stage for failure to state a claim. Taking the facts alleged as true, these claims are rooted in tort and thus are subject to a two-year statute of limitations under which Plakorus timely filed.[6]

---

[6]  The Amended Complaint alleges his claims arose on February 1, 2018, when the allegedly confidential information was published. The Complaint was filed on April 29, 2019, and the Amended Complaint was filed on August 7, 2019.

15

## CONCLUSION

¶27 The District Court erroneously concluded that the duties underlying all of Plakorus's claims arose solely under the contract. We agree with the District Court with respect to the claims for invasion of privacy, violation of privacy rights, and negligence, and we thus affirm the District Court's ruling with respect to those claims. We conclude, however, that Plakorus's Amended Complaint is sufficient to state tort claims for defamation and intentional interference, and those claims survive the State's motion to dismiss. We therefore reverse the District Court's Order in part and remand for further proceedings on the defamation and tortious interference claims.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

Justice Laurie McKinnon, concurring and dissenting.

¶28 I agree with the Court's conclusion that Plakorus's claims alleging violations of his right of privacy, invasion of privacy, and negligence arise from the University's duty to manage Plakorus's personnel information—a duty that exists based on Plakorus's contract of employment with the University. However, the Court's conclusions with respect to Plakorus's counts alleging defamation and tortious interference are similarly grounded in the terms and conditions of his employment contract with the University, and I fail to see the thin distinction the Court makes. The District Court was correct in dismissing the

16

Complaint for failing to timely follow the grievance procedure set forth in § 18-1-402(2), MCA.

¶29 However, even assuming the defamation and tortious interference counts are tethered to a duty owed outside of the employment contract, Plakorus has still failed to follow the appropriate procedure for filing a grievance when a government entity is a defendant. Assuming his claims resound in tort, as the Court concludes, Plakorus has not presented any of his tort claims to the Department of Administration before seeking relief directly in court. Section 2-9-301, MCA; *see Cottonwood Hills v. Dept. of Labor & Indus.*, 238 Mont. 404, 407, 777 P.2d 1301 (1989). The bottom line is that Plakorus has circumvented statutory grievance procedure and is being allowed to file directly in district court, irrespective of whether we deem his claims as arising from a tort or contract.

¶30 That hiccup aside, Plakorus' defamation count asserts he was defamed through mishandling of his employment information and the disclosure of phone records from a University-issued phone to the media. The University's duties respecting Plakorus' employment information arise from specific contractual obligations and the policies and procedures pertaining to that information, which are contained within the contract of employment. Plakorus's claim of tortious interference likewise alleges mishandling of his employment information as it relates to third parties. The duty to handle Plakorus's personnel information arises out of Plakorus's employment contract with the University. Thus, the gravamen of Plakorus's claims arise out of the terms and conditions of his employment which are committed to University policy and procedures. These policies and

17

procedures include the handling of documents and information within Plakorus's personnel file, investigation into his work, and the investigation into the University-issued cell phone.

¶31    The Court's decision allows Plakorus to bypass grievance procedures set forth for both contract and tort claims brought against the State.  Sections 18-1-402(2) and 2-9-301, MCA.  I would affirm the District Court's dismissal because Plakorus failed to properly follow statutorily mandated grievance procedure, whether it be for claims of contract or tort.  The Court's discussion and thinly veiled distinction of these claims is unnecessary and will be problematic in future cases where grievance procedures are mandated and prescribed limitation periods have been set by the legislature.  To the extent the Court holds otherwise, I dissent.

/S/ LAURIE McKINNON